James **ALTES, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 49A02–0403–CR–262.

Court of Appeals of Indiana.

March 1, 2005.

Transfer Denied May 5, 2005.

Mark Small, Marion County Public Defender Agency, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Kelly A. Miklos, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Appellant–Defendant, James Altes (Altes), appeals his conviction for Counts I and V, child molesting, as a Class A felony, Ind.Code § 35–42–4–3; and Counts II, III, and IV, child molesting, as a Class C felony, I.C. § 35–42–4–3.

We affirm.

### ISSUES

Altes raises four issues on appeal, which we consolidate and restate as the following two issues:

(1) Whether the State presented sufficient evidence to sustain Altes' convictions for child molesting; and

(2) Whether the trial court properly sentenced Altes in light of *Blakely v. Washington.*

### FACTS AND PROCEDURAL HISTORY

Altes, born on October 15, 1960, lived with his four children on Hoyt Avenue in Marion County, Indiana. At his residence, Altes maintained a swimming pool, basketball court, and large screen television for his children to enjoy. Several children from the neighborhood and his children's friends often visited Altes' home and frequently spent the night. During these sleep-overs, the children would sleep on blankets in the living room, while Altes would sleep on the couch even though he had his own separate bedroom. In addition to visiting his home, Altes would take the children on trips to the park or to the airport to watch the airplanes.

J.H., born on May 1, 1988, lived with her father on Hoyt Avenue. She frequently visited Altes' home and spent the night there. When she was nine years old, Altes began treating J.H. as his girlfriend by kissing her on the lips, touching her, telling her that he loved her, and that he wanted to marry her. Altes bought J.H. several gifts, including a necklace depicting two kissing angels inscribed with "[t]o [J.H.], on her 11th birthday, Love Jay." (Transcript p. 163). Eventually, J.H.'s feelings toward Altes changed from considering him cool to thinking that she loved him.

One day, when J.H. was around nine years old, she was again spending the day at Altes' residence. As she was taking a shower, Altes entered the bathroom without invitation, undressed, and joined J.H. in the shower. When he got into the shower, Altes started rubbing his hands all over J.H.'s body, including her breasts and vagina.

Sometime in 1999, when J.H. was eleven years old, J.H. was visiting Altes' home and watching television with Altes' daughter in his bedroom. When Altes' daughter left the bedroom, Altes entered the room and locked the door behind him. He first undressed J.H. and then undressed himself. After he rubbed his hands all over

J.H.'s body and kissed her on the lips, Altes inserted his penis inside her vagina. Altes threatened J.H. and told her that he would come after her if she told anyone.

In August of 1999, J.H.'s mom, who is divorced from J.H.'s dad, was living in Lebanon, Indiana. At that time, J.H.'s parents had an argument about Altes driving J.H. to visit her mother without her father's permission. After they talked to Altes, J.H.'s parents informed him that he no longer could see their daughter. The next day, J.H.'s mother received several phone calls from Altes, inquiring why he no longer could spend time with J.H. Several weekends later, J.H.'s mother noticed two posters in the windows of Altes' home, stating "I love you, [J.H.]" and "I miss you, [J.H.]." (Tr. p. 280).

In 1999, H.B., born on March 6, 1988, moved with her mother to a home on Hoyt Avenue. That summer, when H.B. was eleven years old, she stayed overnight at Altes' home. H.B. was lying on the couch while other children were sleeping on the floor of the living room. During the night, Altes, sitting next to her on the couch, asked if he could give her a foot massage, to which she consented. Altes started rubbing her feet with his hand, and then continued to rub her legs for a couple of minutes. Thereafter, Altes moved his hand underneath H.B.'s underwear and started rubbing her bare bottom.

M.D., born on April 5, 1991, lived with her aunt and uncle on Hoyt Avenue. One evening during the summer of 2001, M.D. spent the night at Altes' home. M.D. and Altes' daughter were lying on cushions on the living room floor watching television, while Altes was lying on the couch. At some point, Altes moved onto the floor and laid down behind M.D., who was lying on her side, and put his arm around her. Altes started rubbing her upper body with his hand, first on top of her clothes but,

later, he moved his hand underneath her clothes. Altes stopped when M.D. got up to use the bathroom.

A.B., born on December 7, 1989, was seven years old when she visited Altes' residence. During one visit she stayed overnight, sleeping on the living room floor with other children while Altes slept on the couch. During the night, Altes moved from the couch next to A.B. Altes slipped his hand underneath her clothes and put his finger inside her vagina. As A.B. moved away from him and towards a loveseat, Altes told her to come back, which she refused to do.

On October 23, 2002, the State filed an information, charging Altes with Count I, child molesting of J.H., as a Class A felony and Count II, child molesting of J.H., as a Class C felony. On November 7, 2002, and January 26, 2004, the State amended the information by adding Count III, child molesting of M.D., as a Class C felony; Count IV, child molesting of H.B., as a Class C felony; and Count V, child molesting of A.B., as a Class A felony. On January 26 through January 28, 2004, a jury trial was held. At the close of the trial, the jury returned a verdict of guilty on all Counts. Subsequently, on February 20, 2004 a sentencing hearing was held. At the end of the hearing, the trial court sentenced Altes to forty years with ten years suspended and five years probation on Count I, four years on Count II, four years on Count III, four years on Count IV, and thirty years on Count V, with sentences to run consecutively.

Altes now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

### I. *Sufficiency of the Evidence*

Altes first contends that the evidence presented at trial was insufficient to sup-

port his conviction. Specifically, Altes argues that (1) the State failed to prove beyond a reasonable doubt that rubbing H.B.'s bottom was intended to arouse or satisfy sexual desires; (2) the State failed to prove beyond a reasonable doubt that rubbing M.D.'s upper body was intended to arouse or satisfy sexual desires; and (3) J.H.'s testimony is incredibly dubious.

### A. *Standard of Review*

■■■ Our standard of review for a sufficiency of the evidence claim is well-settled. In reviewing sufficiency of the evidence claims, we will not reweigh the evidence or assess the credibility of the witnesses. *Cox v. State*, 774 N.E.2d 1025, 1028–29 (Ind.Ct.App.2002). We will consider only the evidence most favorable to the judgment, together with all reasonable and logical inferences to be drawn therefrom. *Alspach v. State*, 755 N.E.2d 209, 210 (Ind.Ct.App.2001), *trans. denied*. The conviction will be affirmed if there is substantial evidence of probative value to support the conviction of the trier-of-fact. *Cox*, 774 N.E.2d at 1028–29. A judgment will be sustained based on circumstantial evidence alone if the circumstantial evidence supports a reasonable inference of guilt. *Maul v. State*, 731 N.E.2d 438, 439 (Ind.2000).

### B. *Evidence of Intent*

■■■ Initially, Altes argues that the State failed to prove beyond a reasonable doubt that he acted with intent to arouse or satisfy sexual desires when touching H.B. and M.D. Child molesting as a Class C felony is defined by I.C. § 35–42–4–3(b) as

[a] person who, with a child under fourteen (14) years of age, performs or submits to any fondling or touching, of either the child or the older person, with intent to arouse or to satisfy the sexual desires of either the child or the older

person, commits child molesting, a Class C felony.

Thus, in order to convict Altes, the State was required to prove that Altes touched H.B. and M.D. with the intent to arouse or satisfy the child's or his sexual desires.

■■■ Altes' sole argument relates to the intent element of the charge. The element of intent for child molesting may be established by circumstantial evidence and inferred from the actor's conduct and the natural and usual sequence to which such conduct usually points. *Kirk v. State*, 797 N.E.2d 837, 841 (Ind.Ct.App.2003), *reh'g denied, trans. denied*. It is reasonable for a jury to infer that the touching did occur and that the intent did exist without a direct showing of both elements. *Winters v. State*, 727 N.E.2d 758, 761 (Ind. Ct.App.2000), *trans. denied*.

In the instant case, H.B. testified that in the summer of 1999, when she was eleven years old, she spent the night at Altes' residence. The record shows that during the nighttime, she was sitting on the living room couch with Altes. H.B. stated that at one point, Altes asked her if he could give her a foot massage, to which she consented. She explained that although he initially started rubbing her feet with his hand, he moved on to her legs and eventually, started rubbing her bottom. During trial, she clarified that he was touching her on her skin, underneath her t-shirt and underwear. Altes finally ceased when H.B. left the couch to use the bathroom.

We have previously found in *Nuerge v. State*, 677 N.E.2d 1043, 1049 (Ind.Ct.App. 1997), *trans. denied*, that because an inner thigh is in close proximity to the genitals, an erogenous zone, it may itself be the source of sexual gratification. Thus, even though H.B. now testified that Altes touched her bare bottom, a factfinder

could reasonably infer that this touching is close enough to the female genitals as to constitute the source of sexual gratification. *See id.* Further, since the intent element may be inferred from the natural and usual sequence to which the defendant's conduct usually points, we conclude that the jury could reasonably decide that Altes' conduct was geared towards his intent to arouse or satisfy his or H.B.'s sexual desire. I.C. § 35–42–4–3; *see Kirk*, 797 N.E.2d at 841.

With regard to M.D., testimonial evidence establishes that one night during the summer of 2000, M.D. was lying on her side on some cushions on the living room floor of Altes' house, watching television. She stated that at some point, Altes moved from the couch and got down behind her. M.D. continued that Altes, after he laid his arm around her, started rubbing her upper body, initially over her clothes, but then he moved his hand underneath her shirt, touching her skin from her shoulders down to her waist. In *Pedrick v. State*, 593 N.E.2d 1213, 1220 (Ind.Ct.App.1992), *reh'g denied*, we found that the intent element is satisfied where a defendant put his arm around the shoulder of a child and let his hand hang, touching her breast, and where he placed his hand on the shoulder of another child and then on her breast. Here, the record reflects that Altes not merely put his arm around M.D. and let his hand hang, but rather, that he actively started rubbing M.D.'s naked skin from her shoulders down to her waist. Accordingly, we conclude that the trier-of-fact could reasonably infer from M.D.'s testimony that Altes' conduct was intended to arouse or satisfy his or M.D.'s sexual desires. *See Kirk*, 797 N.E.2d at 841.

Therefore, we find that the jury could reasonably decide that Altes molested both H.B. and M.D. *See* I.C. § 35–42–4–3. As shown above, the record clearly supports that Altes touched the girls with the intent to arouse or satisfy his or the girls' sexual desires. *See id.* Consequently, we conclude that there is substantial evidence of probative value to support the judgment of the trial court. *See Cox*, 774 N.E.2d at 1028–29. Thus, we hold that the State presented sufficient evidence to support Altes' conviction for the molesting of H.B. and M.D.

### C. *Incredible Dubiosity Rule*

Next, Altes contends that J.H.'s testimony is inherently unbelievable and incredibly dubious. Specifically, Altes alleges that J.H.'s version of events is inherently incredible given the presence of other children around the house at the time of the molestations. Under the incredible dubiosity rule, a court will impinge on the jury's responsibility to judge the credibility of the witness only when it is confronted with inherently improbable testimony or coerced, equivocal, wholly uncorroborated testimony of incredible dubiosity. *White v. State*, 706 N.E.2d 1078, 1079 (Ind.1999) (quoting *Tillman v. State*, 642 N.E.2d 221, 223 (Ind.1994)); *Stephenson v. State*, 742 N.E.2d 463, 497 (Ind.2001), *cert. denied.* "When a sole witness presents inherently improbable testimony and there is a complete lack of circumstantial evidence, a defendant's conviction may be reversed." *White*, 706 N.E.2d at 1079. However, we have recognized that the application of this rule is rare and is limited to cases where the sole witness' testimony is so incredibly dubious or inherently improbable that no reasonable person could believe it. *Stephenson*, 742 N.E.2d at 497.

In support of his argument, Altes focuses this court's attention on the lack of any supporting testimony by the other child witnesses. In particular, Altes claims that J.H.'s testimony concentrates on two instances of child molestation that occurred during the daytime when there

were a lot of other children visiting the Altes' residence. Therefore, he maintains, her testimony must be unbelievable because none of the other children ever testified that J.H. and Altes disappeared for a significant period of time. Nevertheless, we find the incredible dubiosity rule to be inapplicable. As we have previously clarified, the standard for dubious testimony is inherent contradiction, not contradiction between witnesses' testimony. *See White,* 706 N.E.2d at 1079. Nowhere does Altes explain where J.H.'s testimony is inherently contradictory. By now claiming that he should not be convicted based solely on the testimony of J.H., without any corroborating testimony by other child witnesses and a lack of circumstantial evidence, Altes is actually asking us to reweigh the evidence. *See Cox,* 774 N.E.2d at 1028–29. We decline this invitation.

## II. *Sentencing*

Next, Altes asserts that the trial court's imposition of an enhanced sentence violates *Blakely v. Washington,* —— U.S. ——, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), *reh'g denied.* Specifically, Altes contends that the trial court erred by enhancing his sentence based on aggravators which were not supported by jury findings. Conversely, the State maintains that Indiana's sentencing scheme differs from the one struck down in *Blakely* and that it therefore does not run afoul of the Sixth Amendment. Alternatively, the State claims that, even if *Blakely* should apply, any error in this case is harmless beyond a reasonable doubt.

### A. *Blakely v. Washington*

■■■■■ The determination of the appropriate sentence rests within the discretion of the trial court and we will not reverse the trial court's determination absent a showing of manifest abuse. *Powell v. State,* 751 N.E.2d 311, 314 (Ind.Ct.App.

2001). In *Blakely,* however, the United States Supreme Court held that the Sixth Amendment requires a jury to determine beyond a reasonable doubt the existence of aggravating factors used to increase the sentence for a crime above the presumptive sentence assigned by the legislature. *Blakely,* —— U.S. at ——, 124 S.Ct. at 2536. Specifically, the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the statutory maximum must be submitted to a jury and proved beyond a reasonable doubt." *Id.* (quoting *Apprendi v. New Jersey,* 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000)). The Supreme Court defined this statutory maximum as "the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.*" *Id.* at 2537. (emphasis in original). "In other words, the relevant statutory maximum is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose *without* any additional findings." *Id.* (emphasis in original). Furthermore, we are convinced that the Supreme Court's recent opinion in *United States v. Booker,* 543 U.S. ——, —— – ——, 125 S.Ct. 738, 746–56, 160 L.Ed.2d 621 (2005) (Stevens, J., writing for the Court) does not alter the *Blakely* rule as it now applies in Indiana. As Justice Stevens espoused, "[a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved by a jury beyond a reasonable doubt." *Id.,* 125 S.Ct. at 756. This statement is reinforced by Justice Breyer writing that, "the Court holds that ... the Sixth Amendment requires juries, not judges to find facts relevant to sentencing." *Id.,* 125 S.Ct. at 757.

Accordingly, we concluded in *Krebs v. State*, 816 N.E.2d 469, 475 (Ind.Ct.App. 2004), that it appeared that our trial courts no longer have discretion to sentence a criminal defendant to more than the presumptive sentence unless the defendant waives his right to a jury at sentencing, a jury first determines the existence of aggravating factors, or the defendant has a criminal history.

### B. Indiana's Sentencing Scheme

As its main argument, the State maintains that *Blakely* does not apply to Indiana's sentencing scheme. In particular, the State alleges that *Blakely* does not require jury findings under Indiana's sentencing scheme because a presumptive sentence is merely a guidepost which enables the trial court to impose an appropriate sentence. We are not convinced.

■ We recently held that because in Indiana the presence of a single aggravating circumstance may lead to an enhanced sentence, *i.e.*, one greater than the presumptive sentence, the presumptive sentence equates to *Blakely's* statutory maximum. *See Strong v. State*, 817 N.E.2d 256, 261 (Ind.Ct.App.2004); *Holden v. State*, 815 N.E.2d 1049, 1059 n. 6 (Ind.Ct. App.2004); *Berry v. State*, 819 N.E.2d 443, 456 (Ind.Ct.App.2004). Based on this new, established case law, we reject the State's assertion that the presumptive sentence functions as a sentencing guidepost. Consistent with our prior decisions, we hold that *Blakely* prohibits our trial courts from imposing a sentence greater than the presumptive based on a factor not admitted by the defendant, or submitted to the jury and proven beyond a reasonable doubt.

### C. Aggravating Circumstances

Altes contends that the trial court erred in sentencing him to consecutive sentences,

enhanced by aggravators which were not found by the jury. In the instant case, the trial court sentenced Altes to forty years with ten years suspended and five years probation on Count I, a Class A felony; four years on Count II, a Class C felony; four years on Count III, a Class C felony; four years on Count IV, a Class C felony; and thirty years on Count V, a Class A felony, with sentences to run consecutively. Indiana Code section 35–50–2–4 provides that "[a] person who commits a Class A felony shall be imprisoned for a fixed term of thirty (30) years, with not more than (20) years added for aggravating circumstances or not more than ten (10) subtracted for mitigating circumstances." Pursuant to Indiana Code section 35–50–2–6, "[a] person who commits a Class C felony shall be imprisoned for a fixed term of four (4) years, with not more than four (4) years added for aggravating circumstances, or not more than two (2) years subtracted for mitigating circumstances." Accordingly, the trial court sentenced Altes to the presumptive sentence for all Counts, with exception of Count I which was enhanced by a ten year suspended sentence based on the finding of aggravating factors.

First, Altes disputes the imposition of consecutive sentences as violative of *Blakely*. We disagree. In our recent opinion of *Cowens v. State*, 817 N.E.2d 255, 255 (Ind. Ct.App.2004), we concluded that *Blakely* is not implicated in situations where the trial court imposes consecutive sentences. *See also Bell v. State*, 820 N.E.2d 1279, n. 1 (Ind.Ct.App. 2005).

Next, we have to determine whether the enhanced sentence of Count I violates the *Blakely* holding.[1] In enhancing Altes' sentence, the trial court found the following significant aggravators: (1) Altes was

---

1. We recognize that the trial court sentenced Altes to the presumptive sentence on Counts

II–V. Accordingly, the *Blakely* holding is not implicated on these Counts.

more likely to commit a future offense, (2) multiple victims existed, and (3) Altes' violation of the position of trust with the children and their parents. During the sentencing hearing, the trial court enumerated the following mitigating circumstances: (1) Altes' lack of prior criminal history, and (2) Altes cared and provided for his children. The trial court assigned substantial weight to the first mitigator and minimal weight to the second.

■ Based on our established case law, we find the trial court's generalized aggravator relating to Altes' possible future criminal conduct to be in violation of *Blakely*. As we have held previously, a trial court's assessment of a defendant's future criminal behavior can properly be based upon the defendant's adult or juvenile criminal history. *See, e.g., Bledsoe v. State*, 815 N.E.2d 507, 508 (Ind.Ct.App. 2004), *opinion on reh'g*. Since the instant case is Altes' first conviction, the trial court's speculation regarding his possible lack of future law abiding behavior cannot be derived from his past criminal conduct and thus, is an aggravator which should have been found by the jury. *See Blakely*, —— U.S. at ——, 124 S.Ct. at 2536. Here, the record shows that the jury did not make such a finding.

■ However, we conclude that the jury properly found the existence of the aggravating circumstance of multiple victims. In its charging information, the State specifically listed the victims of each Count of child molestation. In particular, J.H. was the victim of Counts I and II; M.D. of Count III; H.B. of Count IV; and A.B. was the victim of Count V. By requesting the jury to vote on this charging information, the State submitted the fact of multiple victims to the jury. It is clear that the jury, by returning a guilty verdict on all Counts, properly considered this fact and found it justified. Therefore, given

Blakely's clear language that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the statutory maximum must be submitted to a jury and proved beyond a reasonable doubt," we find that the aggravator of multiple victims was properly submitted to the jury and proven beyond a reasonable doubt by the jury's guilty verdict on all Counts. *See id.*

■ Lastly, Altes argues that the aggravating factor of Altes' violation of his position of trust with the children and their parents is improper in light of *Blakely*. We agree. As we stated above, a fact that is not based on Altes' criminal history, not found by a jury, or not admitted by Altes, but used by the trial court to enhance a sentence, runs afoul of the *Blakely* requirements. Here, the record is devoid of any evidence that would justify the finding of this particular aggravator.

■ Nonetheless, if one or more aggravating circumstances cited by the trial court are found invalid on appeal, we must next decide whether the remaining circumstance or circumstances are sufficient to support the sentence imposed. *See Patrick v. State*, 819 N.E.2d 840, 848 (Ind.Ct.App.2004). As we explained in *Means v. State*, 807 N.E.2d 776, 778 (Ind. Ct.App.2004), *trans. denied*:

> Even one valid aggravating circumstance is sufficient to support an enhancement of a sentence. When the sentencing court improperly applies an aggravating circumstance but other valid aggravating circumstances exist, a sentence enhancement may still be upheld. This occurs when the invalid aggravator played a relatively unimportant role in the trial court's decision. When a reviewing court "can identify sufficient aggravating circumstances to persuade it that the trial court would have entered

the same sentence even absent the impermissible factor, it should affirm the trial court's decision." When a reviewing court "cannot say with confidence that the impermissible aggravators would have led to the same result, it should remand for re-sentencing by the trial court or correct the sentencing on appeal."

Here, we identified one valid aggravator: the existence of multiple victims. During its sentencing hearing the trial court explicitly determined this factor to be a significant aggravator. The trial court also found two mitigators: (1) Altes' lack of prior criminal history, which was assigned substantial weight, and (2) the fact that Altes cared and provided for his children. Furthermore, we are mindful that the trial court only enhanced Altes' sentence for Count I, a Class A felony, while sentencing him to the presumptive sentence on the other Counts of child molesting. Therefore, given the trial court's assigned importance to the remaining aggravator and balanced against the two mitigators, we refuse to hold that the trial court would have imposed a different sentence. *See id.* Therefore, we find that the trial court did not err by imposing an enhanced sentence on Count I. Accordingly, we are not in a position to revise Altes' sentence on appeal.

### CONCLUSION

Based on the foregoing, we find that the State presented sufficient evidence to sustain Altes' convictions for child molesting and that the trial court properly sentenced Altes.

Affirmed.

CRONE, J., concurs.

ROBB, J., concurs in part and concurs in result in part with separate opinion.

ROBB, Judge, concurs in part and concurs in result in part with separate opinion.

I concur in the majority's resolution of the sufficiency issue, but respectfully concur only in result as to the sentencing issue.

The majority concludes that *"Blakely* prohibits our trial courts from imposing a sentence greater than the presumptive based on a factor not admitted by the defendant, or submitted to the jury and proven beyond a reasonable doubt." Op. at 1124. For the reasons previously set forth in my concurring in result opinion in *Abney v. State,* 822 N.E.2d 260 (Ind.Ct. App., 2005), I disagree that *Blakely* so prohibits Indiana courts from exercising their sentencing discretion. I would not therefore find any of the aggravators improper because of *Blakely* and would affirm the sentence. If, however, the aggravators were found to be improper for reasons other than *Blakely,* I would agree with the majority's conclusion that the multiple victim aggravator is alone sufficient to support Altes' sentence. I therefore concur in the majority's result affirming Altes' sentence.