**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

ATTORNEY FOR APPELLANT:

**GREGORY L. FUMAROLO**
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ANGELA N. SANCHEZ**
Deputy Attorney General
Indianapolis, Indiana

FILED

Jun 12 2012, 9:11 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JAMES O. REICHENBAUGH, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No.  02A03-1110-CR-492 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE ALLEN SUPERIOR COURT
The Honorable Frances C. Gull, Judge
Cause No. 02D05-1012-FA-60

June 12, 2012

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BAKER, Judge**

Appellant-defendant James O. Reichenbaugh appeals his convictions of three counts of child molesting[1] as class A felonies; two counts of child molesting[2] as class C felonies; two counts of sexual misconduct with a minor[3] as class B felonies; and one count of sexual misconduct with a minor[4] as a class C felony. Specifically, Reichenbaugh argues that there is insufficient evidence to support his convictions because the fourteen-year-old victim's testimony is incredibly dubious. Reichenbaugh also contends that his sentence is inappropriate given the nature of the offenses and his character.

Concluding that the incredible dubiosity rule does not apply in this case, and that Reichenbaugh was properly sentenced, we affirm the judgment of the trial court.

FACTS

In 2002, when B.T. was six years old, her mother, Cynthia, married Reichenbaugh. When B.T. was ten years old, she and Reichenbaugh often stayed up late together watching television after Cynthia went to bed. One night, Reichenbaugh rubbed B.T.'s stomach both on top of and underneath her clothes. Over time, the physical contact progressed to Reichenbaugh rubbing B.T.'s vagina, placing his finger in it, and making B.T. touch his penis. Eventually, Reichenbaugh and B.T. began engaging in oral

---

[1] Ind. Code § 35-42-4-3(a).

[2] I.C. § 35-42-4-3(b).

[3] I.C. § 35-42-4-9(a).

[4] I.C. § 35-42-4-9(a).

sex and sexual intercourse on a regular basis. In addition, Reichenbaugh gave B.T. cigarettes, drugs, and alcohol.

As B.T. became older, she and Reichenbaugh engaged in sexual acts in the bathroom, a tent, the garage, and the shed. One time, while Reichenbaugh and B.T. were driving in the country, Reichenbaugh removed his penis from his boxer shorts and had B.T. sit on his lap facing him so that they could have sexual intercourse while he drove. Another time, while B.T.'s mother and sister were sleeping at one end of a sectional sofa in the living room, B.T. massaged Reichenbaugh's penis, and Reichenbaugh placed his finger in B.T.'s vagina while they were sitting at the other end of the sofa.

The last sexual encounter between Reichenbaugh and B.T. occurred in September 2010 when B.T. was fourteen years old. B.T. and Reichenbaugh were in the shed in their back yard. B.T. placed a condom on Reichenbaugh's penis, and Reichenbaugh told B.T. to take her pants off, bend over, and grab her ankles. Reichenbaugh then inserted his penis into B.T.'s vagina from behind. At some point, Reichenbaugh removed the condom and placed it inside a beer can.

Throughout the years of abuse, B.T. regularly sneaked out of her bedroom window between 2:30 and 3:00 a.m. and ran down the street to her best friend S.H.'s house. B.T. climbed into S.H.'s open window and confided in her about what was happening with Reichenbaugh. S.H. eventually revealed the sexual relationship between Reichenbaugh and B.T. to another classmate, who posted statements about the abuse on B.T.'s Facebook page. B.T.'s older sister read about the abuse and confronted B.T. Later that

day, B.T. revealed to her sister and mother that she and Reichenbaugh had been engaging in sexual intercourse for years.

B.T. and her mother reported the abuse to the police, who searched the family's home for evidence. The police located a can with a condom in it in the trash behind the house. DNA testing revealed that the major DNA profile on the inside of the condom was consistent with Reichenbaugh's DNA profile, and the major DNA profile on the outside of the condom was consistent with B.T.'s DNA profile. Reichenbaugh, however, accused B.T. of placing her DNA on a condom that he had used while masturbating.

A jury convicted Reichenbaugh of three counts of class A felony child molesting, two counts of class C felony child molesting, two counts of class B felony sexual misconduct with a minor, one count of class C felony sexual misconduct with a minor, and contributing to the delinquency of a minor as a class A misdemeanor. At the sentencing hearing, Reichenbaugh claimed B.T. had "set [him] up and used the system to get [him] out of her way." Sent. Tr. p. 11. He also blamed his convictions on a biased court system and an ineffective trial counsel.

Following the sentencing hearing, the trial court found the following two aggravating factors: 1) Reichenbaugh's criminal history that included one felony conviction in 2006 for operating while intoxicated, two misdemeanor convictions for driving with a suspended license, and a third misdemeanor conviction for operating a vehicle with a blood alcohol level over .15; and 2) Reichenbaugh's violation of the position of trust that he held with B.T. The trial court sentenced Reichenbaugh to forty

4

years for each class A felony child molesting conviction, sentences to run concurrently, and five years for each class C felony child molesting conviction, sentences to run concurrently to each other, but consecutively to the forty years imposed for the class A felony, for a total of forty-five years. The trial court also sentenced Reichenbaugh to fifteen years for each class B felony sexual misconduct with a minor conviction, sentences to run concurrently to each other but consecutively to the forty-five-year sentence, for a total of sixty years. Lastly, the trial court ordered Reichenbaugh to serve five years for his class C felony sexual misconduct with a minor conviction, and one year for his class A misdemeanor contributing to the delinquency of a minor conviction, sentences to run consecutively to each other and to the sixty-year sentence, for a total aggregate sentence of sixty-six years. Reichenbaugh appeals his conviction and sentence.

## DISCUSSION AND DECISION

### I. Sufficiency of the Evidence

Reichenbaugh argues that there is insufficient evidence to support his convictions. Reichenbaugh's sole challenge to the sufficiency of the evidence is that B.T.'s testimony was inherently improbable and incredibly dubious. In reviewing sufficiency of the evidence claims, we will not reweigh the evidence or assess the credibility of the witnesses. Cox v. State, 774 N.E.2d 1025, 1028-29 (Ind. Ct. App. 2002). We will consider only the evidence most favorable to the judgment, together with all reasonable and logical inferences to be drawn therefrom. Alspach v. State, 755 N.E.2d 209, 210

5

(Ind. Ct. App. 2001). The conviction will be affirmed if there is substantial evidence of probative value to support it. Cox, 774 N.E.2d at 1028-29.

Under the incredible dubiosity rule, a court will impinge on the jury's responsibility to judge the credibility of the witnesses only when it is confronted with inherently improbable testimony or coereced, equivocal, wholly uncorroborated testimony of incredible dubiosity. Altes v. State, 822 N.E.2d 1116, 1122 (Ind. Ct. App. 2005). Stated another way, when a sole witness gives inherently improbable testimony, and there is a complete lack of circumstantial evidence, a defendant's conviction may be reversed. Id. However, the application of this rule is rare and limited to cases where the sole witness's testimony is so incredibly dubious or inherently improbable that no reasonable person could believe it. Id.

Here, Reichenbaugh contends that B.T.'s testimony that she engaged in sexual acts with him in the bathroom, a tent, the garage, the shed, the yard, and in a car while he was driving is inherently improbable and incredibly dubious. He further claims that B.T.'s testimony that she massaged Reichenbaugh's penis, and that Reichenbaugh inserted his finger into her vagina while they were sitting in the living room at one end of the sofa sectional while B.T.'s mother and sister napped at the other end of the sectional "runs contrary to human experience." Appellant's Br. p. 9. According to Reichenbaugh, B.T.'s "stories" are not corroborated. Appellant's Br. p. 15.

However, the standard for dubious testimony is inherent contradiction. Id. Nowhere does Reichenbaugh explain where B.T.'s testimony is inherently contradictory.

6

By claiming that he should not be convicted based solely on the testimony of B.T., without any corroborating testimony from other witnesses, Reichenbaugh is asking us to reweigh the evidence. See Altes, 822 N.E.2d at 1123. This we will not do. See Cox, 774 N.E.2d at 1028-29.

We further note that B.T.'s testimony about her last sexual encounter with Reichenbaugh in the shed was in fact corroborated by the discovery of the condom with DNA consistent with both B.T.'s and Reichenbaugh's DNA. Further, S.H. corroborated B.T.'s testimony that she went to S.H.'s house in the middle of the night for years to confide in her friend about the molestations.

The incredible dubiosity rule simply does not apply in this case, and Reichenbaugh's argument therefore fails. Moreover, we find from the evidence presented that the evidence was sufficient to support Reichenbaugh's convictions.

## II. Sentence

Reichenbaugh also argues that the trial court erred in sentencing him. He specifically argues that his sentence is inappropriate in light of the nature of the offenses and his character. Indiana Appellate Rule 7(B) provides that we may revise a sentence authorized by statute if, after due consideration of the trial court's decision, we find that the sentence is inappropriate in light of the nature of the offense and the character of the offender. We understand and recognize the unique perspective that a trial court brings to its sentencing decisions. Rutherford v. State, 866 N.E.2d 867, 873 (Ind. Ct. App. 2007). Our principal role should therefore be to attempt to leaven the outliers, and identify some

guiding principles for trial courts and those charged with the improvement of sentencing statutes, but not to achieve a perceived "correct" result in each case. Cardwell v. State, 895 N.E.2d 1219, 1225 (Ind. 2008). We should focus on the forest – the aggregate sentence – rather than the trees – consecutive or concurrent, number of counts, or length of the sentence on any individual count. Id. The defendant bears the burden of persuading us that the sentence is inappropriate. Childress v. State, 848 N.E.2d 1073, 1080 (Ind. 2006).

Here, with regard to the nature of the offenses, Reichenbaugh began a sexual relationship with B.T. when she was ten years old. The relationship lasted for over four years until B.T. told her mother and sister what had been happening. During this time, Reichenbaugh also gave B.T. cigarettes, alcohol, and drugs.

With regard to the character of the offender, Reichenbaugh was B.T.'s stepfather and violated a position of trust in B.T.'s life by engaging in a sexual relationship with her for over four years. Reichenbaugh also has a prior criminal history that includes one felony and three misdemeanor convictions. Under these facts and circumstances, Reichenbaugh has failed to persuade us that his sixty-six year sentence is inappropriate in light of the nature of the offenses and his character.

The judgment of the trial court is affirmed.

KIRSCH, J., and BROWN, J., concur.