**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**JEFFRY G. PRICE**
Peru, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JESSE R. DRUM**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JERRY L. SIERS, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 85A02-1310-CR-888 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE WABASH CIRCUIT COURT
The Honorable Robert R. McCallen, III, Judge
Cause No. 85C01-1301-FA-24

**May 22, 2014**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**RILEY, Judge**

## STATEMENT OF THE CASE

Appellant-Defendant, Jerry L. Siers (Siers), appeals his conviction for Counts I-II, child molesting, Class A felonies, Ind. Code § 35-42-4-3(a); Count III, child molesting, a Class C felony, I.C. § 35-42-4-3(b); and Counts IV-VII, tattooing a minor, Class A misdemeanors, I.C. § 35-42-2-7(c).

We affirm.

## ISSUES

Siers raises seven issues on appeal, which we consolidate and restate as the following five issues:

(1) Whether Siers waived his constitutional right to be present during trial;

(2) Whether the State presented sufficient evidence to establish venue for each Count by a preponderance of the evidence;

(3) Whether Siers' right to a fair trial was violated by a witness' testimony;

(4) Whether the State presented sufficient evidence beyond a reasonable doubt to establish Siers' convictions for child molesting; and

(5) Whether the trial court properly sentenced him.

## FACTS AND PROCEDURAL HISTORY

Forty-two-year old Siers and Linda Siers (Linda) were married in April of 2011. Siers, Linda, and Linda's two daughters lived in a house in LaFountaine, Wabash County, Indiana. Shortly after the wedding, they moved to a house at "218" in Wabash

2

County. (Transcript p. 33). Linda worked nights at a nursing home, while Siers, who was unemployed, stayed home with Linda's two children.

In January of 2012, Linda's daughter, B.D., hosted her thirteenth birthday party sleepover at her home. B.D's friends, thirteen-year-old D.L. and fourteen-year-old D.S., spent the night. During the party, Siers gave D.S. synthetic marijuana, also known as Spice or K2. He also gave each of the girls a tattoo: D.S. got a smiley face on her foot, D.L. received a heart on her shoulder, and a heart was tattooed on B.D.'s hand.

Approximately one week after the birthday party, D.L. again spent the night at B.D.'s house. While Linda was at work, B.D, B.D.'s sister, and D.L. watched a movie in Siers' bedroom. When B.D. and her sister went to sleep in their bedroom, D.L. decided to finish watching the movie with Siers. Siers started smoking Spice and offered it to D.L. After refusing twice, D.L decided to try it after the third offer. The Spice "gave [her] a real funny feeling. It made [her] feel like [she] couldn't move." (Tr. p. 91). She became "really tired. Really loopy." (Tr. p. 92). Siers assured her that he would not take advantage of her. However, Siers then grabbed D.L. in a "bear hug," and said "F it." (Tr. pp. 93, 94). When D.L. refused to pull down her pants, Siers stuck his hand in her pants, taking off D.L.'s pants and underwear. Siers removed his pants, got on top of D.L., and put his penis in D.L.'s vagina. The intercourse did not last "very long because his wife was coming home." (Tr. p. 98). They dressed and D.L. went to sleep on the couch.

In March of 2012, B.D.'s thirteen-year-old friend, B.W., spent the night at B.D.'s house. Siers gave B.W. beer and Spice, as well as a tattoo—three dots on her foot.

In May of 2012, Siers called B.D. in his bedroom while Linda was at work and B.D.'s younger sister was at their grandmother's house. Once she was inside, Siers, wearing only a robe, shut the bedroom door and locked it. He threw B.D. on the bed and told her "to pull down [her] pants or he was gonna beat the crap out of [her]." (Tr. p. 42). She pulled down her pants and underwear because she "was terrified, and then he performed oral sex on" her. (Tr. p. 44). Siers "licked her vagina;" B.D. closed her eyes and "tried to block it out." (Tr. p. 44). After "[a]bout fifteen to twenty minutes," she asked him to stop. (Tr. p. 45). Siers replied, "[t]wo more minutes." (Tr. p. 45). B.D. pushed him away, got up, pulled her pants up, unlocked the door, and left the room. As she was leaving, Siers told her not to tell her mother. Because B.D. did not think her mother would believe her, she did not inform her.

On July 17, 2012, when Linda was scrapping metal and B.D.'s sister was in the girls' bedroom, Siers called B.D. into his bedroom and told her to sit down. He told her to "[g]ive [him] a kiss" and then "tried to stick his tongue down [her] throat." (Tr. p. 63). B.D thought he had used Spice prior to kissing her. Because B.D. was "tired of [Siers] trying to do sexual things to [her]," she took her sister outside and together, they called their grandmother. B.D. told her grandmother.

On January 10, 2013, the State filed an Information, charging Siers with two Counts of child molesting, Class A felonies; one Count of child molesting, a Class C felony, and four Counts of tattooing a minor, Class A misdemeanors. On May 30, 2013, the trial court scheduled Siers' jury trial for August 6, 2013. The parties confirmed the trial dates during a status hearing on July 29, 2013. On August 5, 2013, a day before the

scheduled jury trial, the trial court conducted a hearing on Siers' motion in limine. At the close of the hearing, the trial court reminded Siers of his trial the following day. The next day, Siers failed to appear for trial. Finding that Siers had voluntarily and knowingly waived his right to be present at trial, the trial court tried him in absentia. At the close of the evidence, the jury found Siers guilty as charged.

Within hours of Siers' trial, Linda sent text messages to B.D.'s father, asking for gas money. They agreed to meet at the CVS in Marion. Officers accompanied B.D.'s father to the CVS where they met Linda. Siers was not with her but Linda took the officers to the Marion Public Library where they found Siers in an alley. Because Siers refused to give himself up, the officers released a dog, which bit Siers. Due to the dog bite, Siers had to have his right testicle removed.

On September 23, 2013, the trial court conducted a sentencing hearing. At the close of the hearing, the trial court sentenced him

> with respect to Count I, it will be a forty-five year sentence. Count II will be a forty-five year sentence, consecutive to Count I. Count III will be a six-year sentence. And Counts IV, V, VI, and VII will be one-year sentences. Counts II, III through VII will be all concurrent with each other, but consecutive to Count I. And I, frankly, would give you more if I thought I would get away with it.

(Tr. pp. 221-22).

Siers now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

### I. *Trial in Absentia*

5

First, Siers contends that the trial court violated his constitutional right to be present at all stages of his trial by trying him in absentia. Both the Federal and Indiana Constitutions afford defendants in a criminal proceeding the right to be present at all stages of their trial. U.S. Const. amend. VI; Ind. Const. art. 1, §13. However, a defendant may be tried in absentia if the trial court determines that the defendant knowingly and voluntarily waived that right. *Jackson. v. State*, 868 N.E.2d 494, 498 (Ind. 2007).

> When a defendant fails to appear for trial and fails to notify the trial court or provide it with an explanation of his absence, the trial court may conclude the defendant's absence is knowing and voluntary and proceed with trial when there is evidence that the defendant knew of his scheduled trial date.

*Freeman v. State*, 541 N.E.2d 533, 535 (Ind. 1989); *see also Lampkins v. State*, 682 N.E.2d 1268, 1273 (Ind. 1997) ("The best evidence that a defendant knowingly and voluntarily waived his or her right to be present at trial is the defendant's presence in court on the date the matter is set for trial.").

The record reflects that on May 30, 2013, the trial court scheduled Siers' jury trial for August 6, 2013. During a pretrial hearing on July 1, 2013, at which Siers appeared, the trial court confirmed the trial date. Siers was again reminded of his upcoming trial date during the final status hearing on July 29, 2013, at which Siers was present. One day before trial, on August 5, the trial court conducted a hearing on Siers' motion in limine. Siers participated in the hearing. Again, the trial court specifically advised Siers to return the following day for his trial. Nevertheless, Siers failed to appear.

6

At the sentencing hearing, Siers' probation officer testified to Siers' knowledge of his trial date. The probation officer explained that even though Siers was aware of his trial, "[h]e didn't feel like he had a chance at trial[.] He reported that they left their house that day to come to trial and decided to return home and just have a few extra days before law enforcement came for him." (Tr. p. 215). In light of this evidence, the trial court properly concluded that Siers' knowledge of his trial date coupled with a lack of explanation for his absence supported a determination that he voluntarily and knowingly waived his right to be present.

## II. *Establishing Venue*

Next, Siers claims that, with the exception of Count I, the State failed to establish the venue of the charges. A defendant has a constitutional right to be tried "in the county in which the offense shall have been committed." Ind. Const. art.1, §13. Because venue is not an element of the offense, the State is required to prove venue by a preponderance of the evidence rather than beyond a reasonable doubt. *Smith v. State*, 835 N.E.2d 1072, 1073 (Ind. Ct. App. 2005). When the defendant challenges venue at the conclusion of the State's case, the question becomes one of the sufficiency of the evidence supporting the conclusion that the defendant was tried in the proper county. *Id.* This court treats a claim of insufficient evidence of venue in the same manner as other claims of insufficient evidence. *Id.* We neither reweigh the evidence nor assess witness credibility and look only to the evidence and the reasonable inferences drawn therefrom which support the conclusion of requisite venue. *Id.*

During the testimony of B.D., the State established that the family had moved from a house in Lafountaine to a converted two-story log cabin at "218" shortly after Siers and Linda got married. (Tr. 33). B.D. described the house on 218, including Linda and Siers' bedroom. She replied affirmatively when the State asked her whether "[a]ll these events that I've asked you about so far, those happened on—at the house on 218 here in Wabash County, is that right?" (Tr. p. 61). At that point, the State had elicited testimony about Counts I, II, IV-VI. Also, through B.D.'s testimony, the State established that D.L. had only spent the night at 218, the house in Wabash County, which supports Count II. Furthermore, B.D. testified that Siers kissed her with his tongue while in his bedroom, which goes toward Count III.

The other victims corroborated B.D.'s testimony that all events took place in the 218 house in Wabash County. D.L. testified that Siers had intercourse with her in his bedroom. D.L. and D.S. testified that Siers tattooed them in his bedroom during B.D.'s birthday party. B.W., who also received a tattoo, specifically affirmed that this took place "at that house on 218 here in Wabash County." (Tr. p. 164). Based on the foregoing, we conclude that the State established the venue for each Count by a preponderance of the evidence.

### III. *Right to a Fair Trial*

Prior to trial, Siers filed a motion in limine to exclude any mention of his prior criminal history. On August 5, 2013, the trial court conducted a hearing on Siers' motion

8

and decided that it would "rule on same during trial." (Appellant's Br. 10-11).[1] During B.D.'s testimony at trial, B.D. stated that Siers "said something about going – he was gonna use me to get back to prison so he could die where he belonged." (Tr. p. 43). Siers now contends that he was denied a fair trial because B.D. divulged to the jury that he had a criminal history.

A motion in limine is used as a protective order against prejudicial questions and statements being asked during trial. *Clausen v. State*, 622 N.E.2d 925, 927 (Ind. 1993), *reh'g denied*. The ruling does not determine the ultimate admissibility of the evidence; that determination is made by the trial court in the context of the trial itself. *Id*. Because the ruling on a motion in limine is a preliminary ruling, the decision alone is insufficient to preserve error for an incorrect ruling on the motion. *Id*. By requiring that an objection be made during the trial at the time when the testimony is offered into evidence, the trial court is able to consider the evidence in the context in which it is being offered and is able to make a final determination on admissibility. *Id*.

Here, the trial court did not rule on the motion, instead electing to reserve its ruling until the situation would arise at trial. This occasion arose during B.D.'s testimony. However, at the time of the disputed statement, Siers did not object. Because Siers failed to make a timely objection to the evidence at trial, nor argued fundamental error on appeal, he has waived his argument for appellate review. *See id*.

IV. *Sufficiency of the Evidence*

---

[1] Although customarily we would cite to Appellant's Appendix for references to the trial court's docket, Appellant omitted to include the docket in its appendix.

9

Contesting the sufficiency of the evidence, Siers asserts that the State failed to present sufficient evidence with respect to two Counts of child molesting, as Class A felonies, and one Count of child molesting, as a Class C felony, to support his conviction on these charges. Our standard of review for a sufficiency of the evidence claim is well settled. In reviewing sufficiency of the evidence claims, we will not reweigh the evidence or assess the credibility of the witnesses. *Moore v. State*, 869 N.E.2d 489, 492 (Ind. Ct. App. 2007). We will consider only the evidence most favorable to the judgment, together with all reasonable and logical inferences to be drawn therefrom. *Id.* The conviction will be affirmed if there is substantial evidence of probative value to support the conviction of the trier of fact. *Id.*

A. *Child Molesting, as a Class C Felony*

In order to convict Siers of child molesting, as a Class C felony, the State was required to establish that Siers, with B.D., who was under the age of fourteen, performed or submitted to any fondling or touching of either B.D. or Siers, with the intent to arouse or satisfy the sexual desires of either the child or Siers. *See* I.C. § 35-42-4-3(b). The charge stems from the July 17, 2012 incident when Siers asked B.D. to kiss him.

Siers maintains that although B.D. testified that Siers inserted his tongue in her mouth, "she did not testify that there was any fondling or touching" done with the intent to arouse him. (Appellant's Br. pp. 8-9). While the mere touching is not sufficient to prove a Class C felony child molesting, the State is also required to establish that the "act of touching was accompanied by the specific intent to arouse or satisfy sexual desires." *Bass v. State*, 947 N.E.2d 456, 460 (Ind. Ct. App. 2011), *trans. denied*. That intent "may

be established by circumstantial evidence and may be inferred from the actor's conduct and the natural and usual sequence to which such conduct usually points." *Id*.

B.D. testified that Siers ordered her to come into his bedroom and told her to "[j]ust give me a kiss." (Tr. p. 63). She stated that she "gave him a kiss and then he stuck his tongue in [her] mouth." (Tr. p. 63). The mere fact of kissing necessarily requires a touching. Moreover, in *Davis v. State*, 956 N.E.2d 726, 730 (Ind. Ct. App. 2011), we concluded that "the natural and usual sequence associated with 'tongue kissing'" is the arousal or satisfaction of sexual desires. Therefore, we find that the State presented sufficient evidence beyond a reasonable doubt to support Siers' conviction for child molesting as a Class C felony.

### B. *Child Molesting, as a Class A Felony*

Siers was convicted of two Counts of child molesting, as Class A felonies. To convict Siers, the State was required to establish that he, being at least twenty-one years of age, with a child under fourteen years of age, performed or submitted to sexual intercourse or deviate sexual conduct. *See* I.C. § 35-42-4-3(a)(1).

### 1. *Count I*

Siers' first Count for child molesting, as a Class A felony, refers to the incident with B.D. in which B.D. testified that, after locking the door to his bedroom, Siers threw B.D. on the bed and told her to pull down her pants or "he was gonna beat the crap out of [her]." (Tr. p. 42). Because she was terrified, B.D. did as she was told and Siers performed "oral sex on [her]." (Tr. p. 44). She stated, as conceded by Siers, that he

11

"licked [her] vagina." (Tr. p. 44). She kept her eyes closed and tried to "block it out." (Tr. p. 44).

Siers now contends that B.D.'s testimony was incredibly dubious because "[i]f B.D. felt coerced to allow Siers to perform a sex act upon her, how then is it reasonable that she suddenly told him to stop, he did so and then she left the room without any further restraint or a threat[.]" (Appellant's Br. p. 9). Under the incredible dubiosity rule, a court will impinge on the jury's responsibility to judge the credibility of the witness only when it is confronted with inherently improbable testimony or coerced, equivocal, wholly uncorroborated testimony of incredible dubiosity. *Altes v. State*, 822 N.E.2d 1116, 1122 (Ind. Ct. App. 2005), *trans. denied*. When a sole witness presents inherently improbable testimony and there is a complete lack of circumstantial evidence, a defendant's conviction may be reversed. *Id*. However, we have recognized that the application of this rule is rare and is limited to cases where the sole witness' testimony is so incredibly dubious or inherently improbable that no reasonable person could believe it. *Id*. Those cases where we have found testimony inherently improbable or of incredible dubiosity have involved either situations where the facts as alleged "could not have happened as described by the victim and be consistent with the law of nature or human experience, [] or the witness was so unequivocal about the act charges that his uncorroborated and coerced testimony was riddled with doubt about its trustworthiness." *Feyka v. State*, 972 N.E.2d 387, 392 (Ind. Ct. App. 2012), *review denied*. The case before us does not fall within either category.

12

Here, B.D. testified that she was terrified by the threats made by Siers at the beginning of the molestation and she complied with his demand. She closed her eyes and tried to block it out. However, after he performed oral sex for "[a]bout fifteen to twenty minutes," she asked Siers to stop. (Tr. p. 45). He replied "[t]wo more minutes," but did not threaten "beat the crap out of" her again. (Tr. pp. 45, 42). B.D. just got up, unlocked the door, and left. We cannot say that B.D.'s testimony is dubious, let alone incredibly dubious.

### 2. *Count II*

Siers' second Count of child molesting, as a Class A felony, pertains to the incident surrounding D.L. Spending the night at B.D.'s house, D.L. testified that after B.D. and her sister went to sleep in their bedroom, D.L. decided to finish watching a movie with Siers in Siers' bedroom. Siers started smoking Spice and coaxed D.L. into trying it. D.L. stated that the Spice "gave [her] a real funny feeling. It made [her] feel like [she] couldn't move." (Tr. p. 91). She became "really tired. Really loopy." (Tr. p. 92). Siers then pulled D.L. into a bear hug. When she refused to take off her pants, Siers stuck his hand in her pants, taking off D.L.'s pants and underwear. Siers removed his pants, got on top of D.L., and put his penis in D.L.'s vagina. D.L. testified that the intercourse did not last "very long because his wife was coming home." (Tr. p. 98).

Siers asserts that the evidence is insufficient to support his conviction because "[t]here was no testimony to suggest that D.L. had ever engaged in sexual intercourse before this occasion with Siers." (Appellant's Br. p. 10). We find his argument to be meritless. To be convicted, the statute requires a one-time sexual intercourse or deviate

13

sexual conduct, it does not mandate sexual intercourse on a prior occasion. Rather, proof of the slightest penetration is sufficient to satisfy the statute. *See Stetler v. State*, 972 N.E.2d 404, 407 (Ind. Ct. App. 2012), *trans. denied*. In this light, the uncorroborated testimony of the victim is sufficient evidence to sustain a child molesting conviction. *Archer v. State*, 966 N.E.2d 341, 351 (Ind. Ct. App. 2013). D.L. stated explicitly and unequivocally that Siers placed his penis in her vagina. This testimony alone is sufficient to support Siers' conviction beyond a reasonable doubt. We affirm Siers' convictions for two Counts of child molesting, as Class A felonies and one Count of child molesting, as a Class C felony.

## V. *Sentencing*

Lastly, Siers contends that his aggregate sentence is inappropriate in light of his character and nature of the charges. A sentence authorized by statute will not be revised unless the sentence is inappropriate in light of the nature of the offense and the character of the offender. Ind. Appellate R 7(B). It is the defendant's burden to persuade the appellate court that his or her sentence has met the inappropriateness standard of review. *Roush v. State*, 875 N.E.2d 801, 812 (Ind. Ct. App. 2007). Sentencing is principally a discretionary function in which the trial court's judgment should receive considerable deference. *Cardwell v. State*, 895 N.E.2d 1219, 1222 (Ind. 2008). Indiana's flexible sentencing scheme allows trial courts to tailor an appropriate sentence to the circumstances presented. *Id.* The principal role of appellate review is to attempt to "leaven the outliers." *Id*. at 1225. Whether we regard a sentence inappropriate at the end of the day turns on "our sense of the culpability of the defendant, the severity of the

14

crime, the damage done to others, and a myriad other facts that some to light in a given case." *Id*. at 1224.

Siers was convicted of two Counts of child molesting as Class A felonies and one Count of child molesting, as a Class C felony.[2] The sentencing range for a Class A felony is twenty to fifty years, with an advisory sentence of thirty years. I.C. § 35-50-2-4. For Class C felonies, the sentencing range is between two and eight years, with a four-year advisory sentence. The trial court sentenced Siers to forty-five years each on the Class A felonies, to be served consecutively and six years on the Class C felony, concurrent to Count II but consecutive to Count I. As a parting statement, the trial court wished "my hope and prayer is that the sentence I impose is [] not tampered with anywhere else[.] [] And I, frankly, would give you more if I thought I would get away with it." (Tr. p. 222).

With respect to the nature of the crime, we note that the molestations took place in B.D.'s own home—and for the other victims: their friend's home—a place that is meant to be a secure environment and a safe haven, not a place where children can be preyed upon. Siers was a father figure to B.D., shared a home with her, and was responsible for her discipline. As the step-father, he was in position of trust towards B.D.'s friends. Violating this trust, he plied his victims with alcohol and drugs, or in the case of B.D., force and threats.

Turning to Siers' character, we are immediately struck by the extensiveness of his criminal history, both as a juvenile and adult. As a juvenile, Siers has adjudications for, to list only a few, curfew violations, three criminal conversions, three thefts, and breaking

---

[2] Siers does not appear to contest his sentence for the four misdemeanor convictions.

15

and entering. When Siers was sixteen-years-old, he was adjudicated with battery with serious injury. He critically injured an eleven-year-old girl by violently and viciously attacking her, slamming her head into a concrete wall and floor and leaving her there without help. In 1991, when Siers was an adult, he was sentenced to forty-six years imprisonment for the murder of an infant. Siers was babysitting his then-girlfriend's seven-month-old son and, in an attempt to stop the infant from crying, he pushed down on the baby's stomach a couple of times until the crying stopped. Instead of trying to better his life by taking classes while at the Department of Correction, he was found guilty on thirty-four formal conduct reports during his incarceration, including, among others, gambling, possession of drug paraphernalia, and physically resisting staff.

Siers has abused alcohol and drugs almost his entire life. He began consuming alcohol at approximately ten or eleven years of age and started using marijuana at approximately nine years of age. Since his initial use, he has abused marijuana, or some form of it, almost every day—including while incarcerated. And recently, as the facts support, started introducing Spice to young children.

Instead of taking responsibility for his actions and, maybe, showing some remorse, Siers elected to flee, to "just have a few extra days before law enforcement came for him." (Tr. p. 215). Although we do not look favorably at avoiding judicial proceedings, at least he had the decency to spare his victims the ordeal of having to testify to the molestations in his presence. However, it is worth noting that, at the time of trial and sentencing, Linda was still convinced that no molestations had taken place and did not believe her daughter and her friends.

16

Ignoring all this evidence, Siers likens his situation to *Sanchez*, *Rivers*, and *Reyes*, whose sentences our courts have found inappropriate in light of their character and nature of the offense, and he requests this court to modify his sentence to the advisory sentence of thirty years for each Class A felony, with sentences to serve concurrently. In *Sanchez v. State*, 938 N.E.2d 720 (Ind. 2010), Sanchez was sentenced to an aggregate terms of eighty years for three Class A child molestation convictions. In light of Sanchez's insignificant record, the fact that the offenses were isolated incidents, rather than systematic or repeated behavior, and the absence of force used on the victims, the supreme court revised his sentence to forty years. *Id*. at 722-23. In *Rivers v. State*, 915 N.E.2d 141 (Ind. 2009), Rivers was convicted of two Counts of Class A felony child molesting and received a consecutive sentence of thirty years on each Count. Observing that Rivers molested his niece on only two occasions in a relatively short period of time, had no prior convictions, maintained steady employment, stopped his criminal conduct on his own accord, and did not commit any other offenses in the seven years that had passed until he was charged, our supreme court revised Rivers' sentences to concurrent rather than consecutive terms. *Id*. at 143-44. Finally, in *Reyes v. State*, 909 N.E.2d 1124 (Ind. Ct. App. 2009), although charged with fifty Counts of various sexual offenses involving the same victim, Reyes pled guilty to three Counts of Class A felony child molesting and received an aggregate sentence of 110 years. Because Reyes admitted guilt and showed remorse, this court revised his sentence and imposed an aggregate term of ninety years. *Id*. at 1129. We find *Sanchez*, *Rivers*, and *Reyes* inapposite: none of the

factors that our courts deemed important to order a sentence revision are present in Siers' case.

Siers is a predator, preying on the young and vulnerable by abusing his position of trust. He enticed these young girls with alcohol and drugs, or submitted them into compliance by using force and threats, in order to molest them, traumatizing them for a long time to come. As reflected by his extensive criminal history, he has no regard for the laws of society and is not willing to take responsibility for his actions, instead claiming that "he was set up." (PSI p. 14). As noted by the trial court, Siers "is zippo as a candidate for probation." (Tr. p. 221). Finding Siers' sentence appropriate in light of the nature of the offenses and his character, we refuse to 'tamper' with the trial court's properly imposed sentence.[3]

## CONCLUSION

Based on the foregoing, we conclude that (1) Siers knowingly and voluntarily waived his constitutional right to be present during trial; (2) the State presented sufficient evidence to establish venue for each Count by a preponderance of the evidence; (3) by failing to object, Siers waived his fair trial argument for our review; (4) the State presented sufficient evidence beyond a reasonable doubt to establish his convictions for child molesting; and (5) Siers' aggregate sentence of ninety years is appropriate in light of the nature of the charges and his character.

---

[3] In his reply brief, Siers asserts for the first time that he "does not dispute the nature and extent of his criminal history as an aggravating circumstance. Rather, Siers believes the sentence is inappropriate in light of the elevated status of the offense of child molesting from a B [f]elony to an A [f]elony." (Appellant's Reply Br. p. 3). "An issue not raised in an appellant's brief may not be raised for the first time in a reply brief." *Chupp v. State*, 830 N.E.2d 119, 126 (Ind. Ct. App. 2005).

Affirmed.

ROBB, J. and BRADFORD, J. concur