Joshua GASPER, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 02A04–0403–CR–129.

Court of Appeals of Indiana.

Sept. 6, 2005.

Transfer Denied Nov. 16, 2005.

Sarah L. Nagy, Indianapolis, for Appellant.

Steve Carter, Attorney General of Indiana, Grant H. Carlton, Deputy Attorney General, Indianapolis, for Appellee.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Appellant–Defendant, Joshua Gasper (Gasper), appeals his conviction for Count I, child molesting, as a Class A felony, Ind.Code § 35–42–4–3; and Count III, reckless possession of paraphernalia, a Class A misdemeanor, I.C. § 35–48–4–8.3(c).

We affirm.

### ISSUES

Gasper raises five issues on appeal, which we restate as follows:

1. Whether Article 1, Section 12 of the Indiana Constitution requires law enforcement officers to record custodial interrogations;

2. Whether the trial court abused its discretion when it admitted two stained washcloths into evidence;

3. Whether statements made by the State amounted to prosecutorial misconduct;

4. Whether the State presented sufficient evidence to sustain Gasper's conviction for child molesting; and

5. Whether the trial court properly sentenced Gasper.

### FACTS AND PROCEDURAL HISTORY

During the week of June 20, 2002, after dating Gasper for approximately three months, Shawna Fahl (Fahl), together with her eighteen-month-old daughter, H.V., moved into Gasper's home in Fort Wayne, Indiana. On the evening of June 19, 2002, Gasper promised Fahl to take on more responsibilities in caring for H.V. The next morning at approximately 10 a.m., after H.V. awoke and Fahl was still asleep, Gasper decided to give H.V. a bath. Because H.V. disliked bathing, she cried when Gasper poured water on her head. As H.V.'s crying woke up Fahl, she entered the bathroom where she noticed Gasper placing a towel around H.V. and lifting her out of the bathtub. Gasper asked Fahl to leave the bathroom. After Fahl went into the living room, Gasper joined her and informed Fahl that H.V. was bleeding but that he did not know where from. When Fahl went into the bathroom to check on H.V., she noticed some blood between her legs and asked Gasper what had happened. Gasper told Fahl that he did not know but suggested that H.V. may have fallen or

that he may have rubbed her too hard when he dried her with a towel. Fahl dressed H.V. and took her to the hospital.

At the hospital, Dr. Kathryn Einhaus (Dr. Einhaus) examined H.V. under anesthesia and observed injuries to her vaginal area and rectum. After Fort Wayne Detective Kathy Morales (Detective Morales) spoke with Fahl at the hospital, she met with Gasper at his residence. Informing him that she was looking for evidence relating to H.V.'s injury, Detective Morales received permission to search Gasper's residence. After the search, Gasper accompanied Detective Morales to the police station to make a statement. Prior to his statement, Detective Morales read Gasper his Miranda rights and Gasper signed a waiver of these rights.

During the interview, Gasper initially told Detective Morales that he rubbed H.V. too hard with the towel after lifting her out of the bathtub. As Detective Dan Tyler (Detective Tyler) continued the interview when Detective Morales left the room, Gasper explained that H.V. was crying so he intentionally put his finger inside H.V.'s vaginal area to see how she would react. Upon Detective Morales' return, Gasper reiterated his statement and elaborated that he put his finger in H.V.'s vagina and actually lifted her off the ground.

On June 20, 2002, the State filed an information charging Gasper with Count I, child molesting as a Class A felony; Count II, child molesting as a Class C felony; and Count III, reckless possession of paraphernalia, a Class A misdemeanor. On January 5, 2004, Gasper pled guilty to Count III, reckless possession of paraphernalia. On January 6 through January 8, 2004, a jury trial was held. At the close of the evidence, the jury returned a guilty verdict for Count I, child molesting as a Class A felony, and found Gasper not guilty of Count II, child molesting as a Class C felony. On February 6, 2004,

after a sentencing hearing, the trial court sentenced Gasper to the presumptive term of thirty years on Count I and the presumptive term of one year on Count III, both sentences to be served concurrently.

Gasper now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

### I. Gasper's Due Process Rights

■ Gasper initially contends that he was deprived of his due process rights under Article 1, Section 12 of the Indiana Constitution because his custodial interrogation was not electronically recorded. Specifically, Gasper asserts that because law enforcement officers failed to record his statements, the officers' recollection of his alleged confession must be considered patently unreliable and consequently should be suppressed. He maintains that a rule of evidence requiring the recording of custodial interrogations will necessarily provide a speedy resolution to the question of a confession's legality and admissibility. In essence, Gasper's contention amounts to a request to revisit our decision in *Stoker v. State*, 692 N.E.2d 1386 (Ind.Ct.App. 1998).

Seven years ago, this court announced in *Stoker* that Article 1, Section 12 of the Indiana Constitution did not require law enforcement officers to record custodial interrogations in places of detention. *Id.* at 1390. Analyzing case law from other jurisdictions, we concluded that only two state courts imposed a requirement that custodial interrogations be recorded. *Id.* at 1388 (citing *Stephan v. State*, 711 P.2d 1156, 1158 (Alaska 1985) (unexcused failure to record custodial interrogation violates due process clause of the state constitution); and *State v. Scales*, 518 N.W.2d 587, 592 (Minn.1994) (exercising the court's supervisory power to mandate suppression of

unrecorded custodial interrogations)). Turning our attention to the Indiana Constitution, we analogized the recording of statements during a custodial interrogation to the general rule with regard to evidence preservation issues as enunciated in *Arizona v. Youngblood*, 488 U.S. 51, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988), *reh'g denied. Stoker*, 692 N.E.2d at 1390. In *Youngblood*, the Supreme Court concluded that the Due Process Clause did not necessarily require police officers to preserve evidence which might exonerate the defendant. *Youngblood*, 488 U.S. at 58, 109 S.Ct. 333. Accordingly, we held that Stoker's due process rights under the Indiana Constitution were not violated because of the police officer's failure to record his statements during custodial interrogation. *Stoker*, 692 N.E.2d at 1390.

While we have to date stopped short of requiring electronic recording of interrogations as a constitutional prerequisite to the admissibility of any resulting statements by the defendant, we fully acknowledge the many benefits that would flow from recording interrogations. In *Stoker* we stated in dicta that:

> although we impose no legal obligation, we discern few instances in which law enforcement officers would be justified in failing to record custodial interrogations in places of detention. Disputes regarding the circumstances of an interrogation would be minimized, in that a tape recording preserves undisturbed that which the mind may forget. In turn the judiciary would be relieved of much of the burden of resolving disputes involving differing recollections of events which occurred. Moreover, the recording would serve to protect police officers against false allegations that a confession was not obtained voluntarily. Therefore, in light of the slight inconvenience and expense associated with the recording of custodial interrogations in their entirety, it is strongly recom-

mended, as a matter of sound policy, that law enforcement officers adopt this procedure.

*Id.* at 1390.

Today, Gasper requests us to take an additional step and transform our recommendation to record interrogations into a constitutional requirement. Even though Judge Sullivan cautioned us from following "the route of the lemming," in the instant case, we mirrored the research done in *Stoker* and fail to discern any change in this nation's case law since *Stoker* was decided. *Id.* at 1389. No state courts other than the courts in *Stephan* and *Scales* have imposed a requirement that custodial interrogations be recorded. However, since *Stoker* three states and the District of Columbia have, by legislation, imposed a recording requirement for certain types of cases and interrogations. *See* 725 Ill. Comp. Stat. Ann. 5/103.2–1 (West 2003); Me.Rev.Stat. Ann. Tit. 25, § 2803–B(1)(J), 2004 Me. Legis. Serv. 780 (West 2004); Tex.Code Crim. Proc. Ann. Art. 38–22, § 3 (West 1999); D.C.Code Ann. § 5–133.20 (2003). Meanwhile, in *State v. Cook*, 179 N.J. 533, 562, 847 A.2d 530 (N.J.2004), the New Jersey supreme court established a committee to study and submit recommendations on the use of electronic recording of custodial interrogations.

The majority of states, reluctant to articulate a recording requirement as a matter of state constitutional law, have nonetheless acknowledged that recording of interrogations would act as a deterrent to police misconduct, reduce the number and length of contested motions to suppress, allow for more accurate resolution of the issues raised in motions to suppress and, at trial on the merits, provide the fact-finder with a complete version of precisely what the defendant did (or did not) say in any statement or confession.

*See Commonwealth v. DiGiambattista,* 442 Mass. 423, 813 N.E.2d 516, 530 (2004). We do not dispute that the evidence of a defendant's alleged statement or confession is one of the most significant pieces of evidence in any criminal trial, and its potent quality is only magnified when the statement or confession is presented to the fact-finder through the testimony of the interrogating officers. However, lack of an electronic recording does not preclude the defendant from challenging the accuracy of the police officer's recollection of the interrogation.

Based on the current case law and this court's decision in *Stoker,* we again decline to impose a constitutional requirement to record custodial interrogations in places of detention. Consequently, we hold that Article 1, Section 12 of the Indiana Constitution does not require police officers to record custodial interrogations in places of detention. Nevertheless, as in *Stoker,* we strongly caution law enforcement officers not to abuse their unfettered discretion as to whether to record a defendant's statements during custodial interrogations. The lack of any recording generally results in the expenditure of significant judicial resources in an attempt to resolve disputes surrounding the circumstances and content of unrecorded statements. There can be little doubt that the electronic recording of a custodial interrogation benefits all parties involved. As even the most scrupulous witness is subject to forgetfulness, a recording would aid the fact-finder's assessment of weighing the testimony of a police officer against the testimony of the defendant by providing a more complete picture of what occurred. In light of the fact that most police departments today possess advanced recording material, we strongly encourage law enforcement officers, as a matter of sound policy and fairness of proceedings, to record all custodial interrogations.

## II. *Admission of Evidence*

█ Next, Gasper asserts that the trial court erred by admitting two stained washcloths into evidence. Specifically, he maintains that the washcloths were improperly admitted because the State failed to establish a chain of custody prior to the admission of the washcloths. On the other hand, the State asserts that Gasper waived his argument on appeal because he objected to the admission of the washcloths on the basis that the State failed to show that they were related to the charges. Accordingly, the State maintains that Gasper cannot object on relevancy grounds at trial and now raise a different argument on appeal.

Our review of the record shows that when the State attempted to introduce the washcloths into evidence, the following colloquy occurred:

[STATE]: I'd move to admit [the washcloths]

[GASPER'S ATTORNEY]: Your honor, we object to [the washcloths] unless there's a show in time these washcloths to this child, to this incident. (inaudible words) to do that otherwise what's the *relevance* of them.

. . .

[GASPER'S ATTORNEY]: We object to the two wash cloth photographs unless there's some showing that *they're somehow related to this.*

(Transcript p. 372) (emphasis added). The record further establishes that after Gasper's attorney objected to the admission of the washcloths based on relevancy, the trial court questioned Gasper's attorney about their origin. During this bench conversation, Gasper's attorney explained that he had received the washcloths from Gasper's previous attorney and, in accordance with the rules of professional conduct, handed them over to the State. However, Gasper's attorney added that since he had

not personally collected them, he had no idea where the washcloths originated from.

Even though Gasper now attempts to fit a conversation between the trial court and his defense counsel as to the origin of the washcloths into a chain of custody objection, we find that only a relevancy objection was lodged against the introduction of the washcloths at trial. As we have previously held that a party cannot raise one ground for the objection at trial and a different ground for objection on appeal, we find that Gasper waived the issue for our review. *Simmons v. State,* 714 N.E.2d 153, 155 (Ind.1999).

### III. *Prosecutorial Misconduct*

Gasper makes a two-fold contention with respect to his argument of prosecutorial misconduct. Gasper first claims that the prosecutor committed misconduct when he argued that the washcloths were stained with blood without presenting evidence of that fact at trial. Second, Gasper maintains that the prosecutor committed misconduct during closing argument by implying that Gasper had the burden to prove his innocence.

 When reviewing a claim of prosecutorial misconduct, we must determine: (1) whether there was misconduct by the prosecutor; (2) and whether that misconduct, under the circumstances, placed the defendant in a position of grave peril to which the defendant should not have been subjected. *Wisehart v. State,* 693 N.E.2d 23, 57 (Ind.1998); *Kent v. State,* 675 N.E.2d 332, 335 (Ind.1996). The gravity of peril turns on the probable persuasive effect of the misconduct on the jury's decision, not on the degree of impropriety of the conduct. *Kent,* 675 N.E.2d at 335 (citing *Bradley v. State,* 649 N.E.2d 100, 107–8 (Ind.1995)).

### A. *Washcloths*

Initially, Gasper claims that the State committed misconduct during closing argu-

ment by referring to the washcloths as "bloody" without presenting evidence of that assertion at trial. (Tr. p. 508). In particular, Gasper objects to the following statement: "As far as there being no blood. There is blood all over these towels. Especially the washcloths." (Tr. p. 546).

 However, to preserve an issue regarding the propriety of a closing argument for appeal, a defendant must do more than simply make a prompt objection to the statement. "The defendant must also request an admonishment, and if further relief is desired, defendant must move for a mistrial. Failure to request an admonishment results in a waiver of the issue for appellate review." *Flowers v. State,* 738 N.E.2d 1051, 1058 (Ind.2000). The record here clearly shows that although Gasper objected to the State's statement in closing argument, he failed to request an admonition. Gasper now attempts to avoid waiver by claiming that the State's statement amounted to fundamental error. We have previously held that in some instances, prosecutorial misconduct may amount to fundamental error. *Prewitt v. State,* 761 N.E.2d 862, 871 (Ind.Ct.App.2002). For this exception to apply, however, the misconduct must have been so prejudicial to the rights of the defendant as to make a fair trial impossible. *Id.* In determining whether an unfair judicial proceeding occurred, we must consider whether the resulting harm or the potential for harm is substantial. *Myers v. State,* 718 N.E.2d 783, 790 (Ind.Ct.App.1999), *trans. denied.*

 We agree with Gasper that the State committed prosecutorial misconduct during its closing argument. While a prosecutor may argue both law and facts and propound conclusions based on his or her analysis of the evidence, the prosecutor must confine closing argument to comments based only upon the evidence pre-

sented in the record. *Lambert v. State*, 743 N.E.2d 719, 734 (Ind.2001). Here, the record discloses that although the washcloths were admitted into evidence at trial, the State never determined that the substance covering them was blood.

■ However, we are not persuaded that the State's misconduct substantially harmed Gasper. *See Myers*, 718 N.E.2d at 790. Our review establishes that Detective Morales testified about finding bloody towels in the laundry basket at Gasper's residence. She elaborated that she collected two blood-stained towels from the laundry basket after searching through the home for evidence. Following this testimony, the State introduced photographs accurately depicting the bloody towels as they were found by Detective Morales and published them to the jury. Accordingly, the jury was informed and had seen the bloody towels. Consequently, we do not believe that an additional reference to washcloths covered with blood had any impermissible persuasive effect on the jury. *See Prewitt*, 761 N.E.2d at 871.

### B. *Burden of Proof*

■ Gasper also claims that during the closing argument, the State shifted the burden of proof. Specifically, Gasper refers to the following comment:

Never once does he tell us through the officers, through [Fahl] or even when he testified what happened. Never once does he say that. He says I don't know what happened. She might have fell, may have rubbed her too hard, all of that. He never once tells us about a specific event that caused that injury.

(Tr. p. 516). Based on this comment, Gasper maintains that the State shifted the burden by informing the jury that he was guilty unless he could provide some plausible explanation for H.V.'s injuries.

■ Again, we note that appellate recourse is waived for the review of alleged trial misconduct when the complaining party failed to timely object at trial. *Corcoran v. State*, 739 N.E.2d 649, 655 (Ind. 2000). In the case at hand, while Gasper lodged no objections to the State's closing argument, he again attempts to avoid waiver by arguing that the State's comments amounted to fundamental error. We disagree.

Our review of the closing argument reveals that the State's comment was made during a comparison of witness testimony between the investigating officers, the State's experts, and Gasper. Specifically, the State asked the jury to "think about [Gasper's] credibility" and to contrast his testimony with the other witnesses' testimony. (Tr. p. 516). Based on the evidence presented at trial, we find the State's comment to be an accurate analysis of the different testimonies, rather than an implication that Gasper must prove his innocence. Therefore, we do not find that the State committed misconduct, let alone fundamental error.

### IV. *Sufficiency of the Evidence*

Next, Gasper contends that the evidence presented at trial was insufficient to support his conviction of Count I, child molesting as a Class A felony. Specifically, Gasper argues that the State failed to prove that Gasper penetrated H.V.'s sex organ.

■ Our standard of review for a sufficiency of the evidence claim is well settled. In reviewing sufficiency of the evidence claims, we will not reweigh the evidence or assess the credibility of the witnesses. *Cox v. State*, 774 N.E.2d 1025, 1028–29 (Ind.Ct.App.2002). We will consider only the evidence most favorable to the verdict, together with all reasonable and logical inferences to be drawn therefrom. *Alspach v. State*, 755 N.E.2d 209, 210 (Ind.Ct.App.2001), *trans. denied*. The conviction will be affirmed if there is sub-

stantial evidence of probative value to support the conviction of the trier-of-fact. *Cox*, 774 N.E.2d at 1028–29. A verdict will be sustained based on circumstantial evidence alone if the circumstantial evidence supports a reasonable inference of guilt. *Maul v. State*, 731 N.E.2d 438, 439 (Ind. 2000).

Child molesting as a Class A felony is defined by I.C. § 35–42–4–3(a)(1) as:

A person who, with a child under fourteen (14) years of age, performs or submits to sexual intercourse or deviate sexual conduct commits child molesting, a Class B felony. However, the offense is a Class A felony if: (1) it is committed by a person at least twenty-one (21) years of age.

Furthermore, deviate sexual conduct "means an act involving: ... (2) the penetration of the sex organ or anus of a person by an object." I.C. § 35–41–1–9(2). Thus, in order to convict Gasper, the State was required to establish beyond a reasonable doubt that Gasper, at least twenty-one years old, penetrated H.V.'s sex organ with his finger.

■■■ Gasper's sole argument relates to the penetration element of the charge. In particular, he claims that because Dr. Einhaus testified that H.V.'s hymen was still intact, he could not have penetrated H.V.'s vagina. The evidence most favorable to the verdict shows that on June 20, 2002, Gasper was twenty-one years old, while H.V. was eighteen months old. During interrogation, Gasper admitted to Detective Tyler that he slipped his finger into H.V.'s vagina because he was curious as to how she would react. Gasper added that while he inserted his finger into her vagina, he actually lifted her off the ground. In *Stewart v. State*, 555 N.E.2d 121, 126 (Ind.1990), our supreme court held that a finger is an object within the meaning of the deviate sexual conduct statute. Thus, Gasper's own admission to the police offi-

cers is sufficient to establish the act of penetration under I.C § 35–42–4–3(a)(1).

Moreover, even though Dr. Einhaus testified that upon examination she found H.V.'s hymen to be intact, she did not conclude that no penetration occurred. Dr. Einhaus elaborated to the jury that, based on the severity of H.V.'s internal injuries, her sex organ had been penetrated multiple times with a finger. She categorically denied that H.V.'s injuries could have been caused by rubbing too hard with a towel.

Accordingly, based on the above, we conclude that the trier-of-fact could reasonably find that Gasper had penetrated H.V.'s vagina with his finger. *See* I.C. § 35–42–4–3. Therefore, we find that there is substantial evidence of probative value to support the verdict of the jury. *See Williams*, 714 N.E.2d at 672. Consequently, we hold that the State presented sufficient evidence to support Gasper's conviction for child molesting as a Class A felony.

### V. *Sentencing*

■■■ Lastly, Gasper asserts that the trial court failed to find any aggravators and ignored two mitigators when it sentenced him to the presumptive term of thirty years on Count I, child molesting. It is well established that sentencing decisions lie within the discretion of the trial court. *Altes v. State*, 822 N.E.2d 1116, 1123 (Ind.Ct.App.2005), *trans. denied.* Sentencing decisions are given great deference on appeal and will only be reversed for an abuse of discretion. *Id.*

■■■ If the trial court finds aggravating or mitigating circumstances, then the trial court must make a statement of its reasons for selecting the sentence imposed. I.C. § 35–38–1–3; *Gist v. State*, 804 N.E.2d 1204, 1205 (Ind.Ct.App., 2004). However, the trial court does not have to

set forth its reasons for imposing the presumptive sentence. *Gist,* 804 N.E.2d at 1205. Thus, if the trial court does not find any aggravators or mitigators and imposes the presumptive sentence, then the trial court does not need to set forth its reasons for imposing the presumptive sentence. *Id.* On the other hand, if the trial court finds aggravator and mitigators, concludes that they balance, and imposes the presumptive sentence, then, pursuant to I.C. § 35–38–1–3, the trial court must provide a statement of its reasons for imposing the presumptive sentence. *Id.*

Here, our review of the sentencing hearing shows that the trial court merely imposed the presumptive sentence without explaining how it arrived at this sentence. Accordingly, we conclude that the trial court did not abuse its discretion. *See Altes,* 822 N.E.2d at 1123.

### CONCLUSION

Based on the foregoing, we hold that (1) Article 1, Section 12 of the Indiana Constitution does not require police officers to record custodial interrogations in places of detention; (2) the trial court did not abuse its discretion when it admitted two stained washcloths into evidence; (3) statements made by the State in closing argument did not amount to prosecutorial misconduct; (4) the State presented sufficient evidence to sustain Gasper's conviction for child molesting as a Class A felony; and (5) the trial court did not abuse its discretion in sentencing Gasper to the presumptive term on Count I, child molesting.

Affirmed.

SULLIVAN, J., and NAJAM, J., concur.