## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED
Nov 10 2015, 8:35 am
CLERK
of the supreme court,
court of appeals and
tax court

---

ATTORNEYS FOR APPELLANT

Stephen T. Owens
Public Defender of Indiana

Jay M. Lee
Deputy Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Ellen H. Meilaender
Deputy Attorney General
Indianapolis, Indiana

---

# IN THE
# COURT OF APPEALS OF INDIANA

---

Donald S. Adcock,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

November 10, 2015

Court of Appeals Case No.
20A03-1504-PC-147

Appeal from the Elkhart Superior Court

The Honorable Teresa L. Cataldo, Judge

Trial Court Cause No.
20D03-1308-PC-50

**Robb, Judge.**

# Case Summary and Issues

[1] On August 20, 2009, Donald Adcock entered a plea of guilty to two counts of child molesting as Class C felonies. The trial court accepted Adcock's plea, entered a judgment of conviction on both counts, and sentenced him to sixteen years in the Indiana Department of Correction. Thereafter, Adcock filed a petition for post-conviction relief wherein he alleged his counsel was ineffective and his guilty plea was involuntary. The post-conviction court denied Adcock's petition. Adcock appeals the denial of post-conviction relief, raising two issues for our review, which we restate as: 1) whether the post-conviction court erred in concluding trial counsel was not ineffective, and 2) whether the post-conviction court erred in concluding his guilty plea was not made involuntarily. Concluding counsel was not ineffective and that his guilty plea was not made involuntarily, we affirm.

# Facts and Procedural History

[2] On January 7, 2009, twelve-year-old C.S. complained to authorities her step-father, Adcock, had touched her vagina multiple times over a two-year period when she was around the age of nine or ten. When interviewed by a forensic interviewer, C.S. stated Adcock would come into her room and touch her vagina under her clothes and on the skin. When interviewed by police, Adcock admitted to rubbing C.S.'s vagina multiple times.

[3]    On April 9, the State charged Adcock with two counts of Class C felony child molesting. On May 19, Susan Snyder, the deputy prosecuting attorney, tendered a plea offer to Adcock's counsel, Fay Schwartz:

> My review of Mr. Adcock's criminal history shows that he has two prior class D felonies for possession of marijuana. My initial thought, after reading the sentencing enhancement statutes, is that Mr. Adcock is habitual eligible. In an effort to dispose of this case in a manner other than trial, the State is willing to extend the following plea agreement in exchange for your client's guilty plea: Any sentence authorized by law but no more than 35 years to be executed.

Appellant's Exhibit D. After Schwartz expressed concern as to whether Adcock was, in fact, habitual eligible, Snyder discovered Adcock was indeed not habitual eligible. As negotiations continued, Snyder indicated to Schwartz the State may consider amending the charges to add either, or both, Class A felony child molesting and Class A attempted child molesting, but did not do so originally because Adcock confessed.

[4]    On June 11, Snyder tendered a final plea offer. According to Schwartz's notes,[1] the State's final offer was for sixteen years, and the offer was to remain open for one week. Per the note, if the parties could not reach an agreement, Snyder would file an "'A' and felony enhancement." Appellant's Ex. H. Despite the note's ambiguity, Schwartz acted under the impression that, in exchange for a

---

[1] Unlike the first plea offer, there is nothing in the record indicating the precise language of the State's final offer aside from the signed written plea agreement.

guilty plea, the State would not charge Adcock with a Class A felony. Schwartz relayed the State's offer to Adcock. Adcock accepted the State's offer.

[5] On June 18, the trial court convened under the premise an agreement had been reached for Adcock to plead guilty and, in exchange, the State would forego the Class A felony charge. When the trial court asked Adcock whether he understood he would be entering a plea of guilty in exchange for the State not filing a Class A felony, Adcock responded affirmatively. Due to confusion as to whether the sentence was to be capped or fixed at sixteen years, however, the trial court found there was no agreement between the parties. The trial court continued the hearing for one week.

[6] On June 25, the trial court reconvened, and the parties proposed the same plea agreement they attempted to enter a week prior. In exchange for the State forgoing the filing of a Class A felony, Adcock entered a plea of guilty on both counts of child molesting as Class C felonies and agreed to a fixed sixteen-year sentence in the Indiana Department of Correction. Per the agreement, the trial court entered a judgment of conviction on both counts and sentenced Adcock to eight years on each count, to be served consecutively for a total of sixteen years.

[7] On August 5, 2013 Adcock filed a *pro se* petition for post-conviction relief. Adcock's petition was later amended by counsel. In his second amended petition, Adcock claimed his trial counsel was ineffective and his guilty plea was involuntary. Specifically, he argued his guilty plea had been induced by the State's threats to add an habitual offender enhancement and/or a Class A

felony child molesting charge, threats which were illusory because he could not be convicted of either. Therefore, he claimed, counsel was deficient in relaying the illusory threats to him as viable threats.

[8] On January 6, 2015, the post-conviction court held an evidentiary hearing, and on April 22, the court issued its findings of fact and conclusions of law denying Adcock's petition for post-conviction relief. This appeal ensued.

# Discussion and Decision

## I. Post-Conviction Standard of Review

[9] Post-conviction procedures create a narrow remedy for subsequent collateral challenges to convictions, and those challenges must be based on the grounds enumerated in post-conviction rules. *Parish v. State*, 838 N.E.2d 495, 499 (Ind. Ct. App. 2005). A post-conviction proceeding is a civil proceeding, and the defendant must establish his claims by a preponderance of the evidence. *Id.*

[10] A petitioner who has been denied post-conviction relief "faces a rigorous standard of review" on appeal. *Dewitt v. State*, 755 N.E.2d 167, 169 (Ind. 2001). In reviewing the judgment of a post-conviction court, we consider only the evidence and reasonable inferences supporting the judgement. *Hall v. State*, 849 N.E.2d 466, 468 (Ind. 2006). "On appeal, we may not reweigh the evidence or reassess the credibility of the witnesses." *Rowe v. State*, 915 N.E.2d 561, 563 (Ind. Ct. App. 2009), *trans. denied*. The post-conviction court's denial of post-conviction relief will be affirmed unless the evidence leads "unerringly and

unmistakably to a decision opposite that reached by the post-conviction court." *McCary v. State*, 761 N.E.2d 389, 391 (Ind. 2002). Only where the evidence is without conflict and leads to but one conclusion, and the post-conviction court reached the opposite conclusion, will the court's findings or conclusions be disturbed as being contrary to law. *Hall*, 849 N.E.2d at 469. Finally, we do not defer to the post-conviction court's legal conclusions, but do accept its factual findings unless they are clearly erroneous. *Stevens v. State*, 770 N.E.2d 739, 746 (Ind. 2002) (citations omitted), *cert. denied*, 540 U.S. 830 (2003).

# II. Ineffective Counsel

## A. Standard of Review

We review claims of ineffective assistance of counsel under the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *Bieghler v. State*, 690 N.E.2d 188, 192 (Ind. 1997), *cert. denied*, 525 U.S. 1021 (1998). To prevail on a claim of ineffective assistance of counsel, the petitioner must show 1) his counsel's performance was deficient, and 2) the lack of reasonable representation prejudiced him. *Randolph v. State*, 802 N.E.2d 1008, 1013 (Ind. Ct. App. 2004), *trans. denied*. To satisfy the first prong, the petitioner must show counsel's representation fell below an objective standard of reasonableness and counsel committed errors so serious petitioner did not have the "counsel" guaranteed by the Sixth Amendment of the United States Constitution. *Reed v. State*, 856 N.E.2d 1189, 1195 (Ind. 2006). To satisfy the second prong, the petitioner must show a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Id.* "A reasonable

probability is a probability sufficient to undermine confidence in the outcome." *Wiggins v. Smith*, 539 U.S. 510, 534 (2003) (quoting *Strickland*, 466 U.S. at 694).

[12] The standard for prejudice in a guilty plea setting, however, is stated slightly different. When a defendant contests his guilty plea based on ineffective assistance of counsel, we apply the same two-part test from *Strickland* discussed above. *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985). The first part, regarding counsel's performance, is largely the same. *Id.* The prejudice requirement, however, "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words . . . the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* at 59.

[13] Under this standard, "[c]ounsel is afforded considerable discretion in choosing strategy and tactics, and we will accord those decisions deference." *Timberlake v. State*, 753 N.E.2d 591, 603 (Ind. 2001), *cert. denied*, 537 U.S. 839 (2002). When reviewing ineffective assistance of counsel claims, we presume counsel rendered adequate legal assistance. *Stevens*, 770 N.E.2d at 746. To overcome this presumption, the defendant must offer strong and convincing evidence. *Smith v. State*, 822 N.E.2d 193, 202 (Ind. Ct. App. 2005), *trans. denied*.

## B.  Counsel's Alleged Deficiencies

[14] Adcock contends trial counsel rendered deficient performance when she advised him to enter a guilty plea in response to the State's illusory threats of

adding an habitual offender enhancement and filing a Class A felony charge. Thus, in order to determine whether counsel was deficient, we must determine first whether an habitual offender enhancement and the filing of a Class A felony charge were threats, and if so, whether they were illusory.

## 1. Habitual Offender Enhancement

[15] Adcock argues the State's threat of adding an habitual offender enhancement was illusory because he was not habitual offender eligible. In support of his argument, Adcock raises three points. First, he cites the State's first plea offer, which included an illusory threat of adding an habitual offender enhancement. Second, he cites his testimony at the post-conviction evidentiary hearing, during which he stated he was led to believe if he did not plead guilty, the State would add an habitual offender allegation. Third, he cites Schwartz's note, made one week prior to the June 18 plea hearing, which included the phrase "'A' and felony enhancement." Petitioners' Ex. H. This note, he claims, shows the illusory threat existed at least one week prior to the June 18 plea hearing.

[16] At the outset, we note the threat was illusory when first stated to Schwartz because Adcock indeed was not habitual eligible. But, as the post-conviction court found,

> 26. Ms. Schwartz testified that she recalled receiving a letter dated May 19, 2009 from Deputy Prosecuting Attorney Susan Snyder, and also acknowledged a note in her file dated June 11, 2009 that contained some reference to a felony enhancement. Ms. Schwartz went on to testify that she did not think that the Habitual Offender Enhancement was a real consideration; and

that she recognized a problem with the sentence initially proposed by Ms. Snyder when she received the May 19, 2000 letter. However, Ms. Schwartz said that she had an obligation to tell [Adcock] everything the State proposed even though she knew the Habitual Offender Enhancement could not be a significant item in the plea negotiations.

27. Ms. Snyder testified that soon after she sent the May 19, 2009, letter to Ms. Schwartz, and well before the plea of guilty was entered, she and Ms. Schwartz realized that the Habitual Offender Enhancement was not viable. Ms. Snyder said the Habitual Offender Enhancement was not a factor after she re-assessed the case, and she changed the offered sentence term from thirty-five (35) to sixteen (16) years as soon as she realized there was no basis for a sentencing enhancement.

28. Even if Ms. Schwartz did initially convey to [Adcock] that the State might file a sentencing enhancement in this case, *thereby causing [Adcock] to originally form the belief that he was eligible for Habitual Offender Enhancement, the testimony of both Ms. Schwartz and Ms. Snyder establishes that this possibility as originally contemplated was caught early on by counsel as error, and the attendant thirty-five (35) year sentence term was withdrawn and was never a part of the plea agreement.* Nothing about the erroneous Habitual Offender Enhancement was ever pursued and was not an issue at the time the final written Plea Agreement was tendered to the court at the plea hearing. Therefore, the plea was not improperly influenced by error on the part of counsel and [Adcock] was competently advised as to his penal consequences.

Appellant's Appendix at 170-71 (emphasis added). Therefore, the post-conviction court was presented with the testimony of Adcock, Snyder, and Schwartz, and based off their testimony, concluded the threat of an habitual offender enhancement ceased to exist by the time Adcock entered his guilty

plea. We will not reassess the credibility of witnesses. *Rowe*, 915 N.E.2d at 563.

[17]  We note the post-conviction court's conclusions are supported by at least one additional point. At the June 18 plea hearing, neither the State, Schwartz, nor Adcock noted a threat of an habitual offender enhancement:

> [Court:] So the consideration flowing to Mr. Adcock for his plea or pleas, is that the state is undertaking not to file those additional charges; is that correct?
> [Schwartz:] That's correct.
> [Court:] Is that your understanding, Ms. Snyder?
> [Snyder:] It is, your Honor.
> [Court:] Are those felony charges?
> [Snyder:] It would have been – gone up to a Class A, your Honor, so, yes.
> [Court:] Very well. And that is your understanding of the consideration as well, Mr. Adcock?
> [Adcock:] Yes, sir, it is.

June 18, 2009, Guilty Plea Hearing Transcript at 5. The plea agreement did not change between the June 18 and June 25 hearings.

[18]  We conclude the evidence does not lead "unerringly and unmistakably to a decision opposite that reached by the post-conviction court." *McCary*, 761 N.E.2d at 391. Because there was no threat at the time Adcock entered his guilty plea, we conclude Schwartz's representation was not deficient.

## 2. Class A Felony

At the outset, we note the State concedes "[t]he only 'threat' that existed at the time [Adcock] pled guilty was the State's intent to file Class A felony charges if [Adcock] did not plead guilty." State's Brief of Appellee at 10. Adcock argues the threat is illusory because the State could not legally support a Class A felony allegation—specifically the State could not prove Adcock did, or attempted to, penetrate C.S.'s sexual organs—and therefore Schwartz was deficient in failing to recognize the illusory nature of the threat. The State argues the facts and circumstances create probable cause to support the threat.

"Generally, 'a bargained plea, motivated by an improper threat, is to be deemed illusory and a denial of substantive rights.'" *Springer v. State*, 952 N.E.2d 799, 805 (Ind. Ct. App. 2011) (quoting *Champion v. State*, 478 N.E.2d 681, 683 (Ind. 1985)), *trans. denied*. "At the moment the plea is entered, the State must possess the power to carry out any threat which was a factor in obtaining the plea agreement which was accepted." *Id.* (citation omitted). "The lack of that real power is what makes the threat illusory and causes the representation to take on the characteristics of a trick." *Id.* (citations omitted).

As relevant to this case, Class A felony child molesting is defined as engaging in sexual intercourse or deviate sexual conduct with a child when the child is under the age of fourteen and the perpetrator is over the age of twenty-one.

Ind. Code § 35-42-4-3(a)(1) (2007).[2]  In addition, a defendant can be convicted of a Class A felony for attempted child molesting.  *See* Ind. Code § 35-41-5-1(a) (1977).  At the time of Adcock's crime, "deviate sexual conduct" was defined, in relevant part, as an act involving the penetration of the sex organ of a person by an object.  Ind. Code § 35-41-1-9 (1984).  We have held a finger is an object for purposes of this statute.  *See Gasper v. State*, 833 N.E.2d 1036, 1044 (Ind. Ct. App. 2005), *trans. denied*.  The female sex organ not only encompasses the vaginal canal, but also includes external genitalia, such as the vulva or labia.  *Short v. State*, 564 N.E.2d 553, 559 (Ind. Ct. App. 1991).

[22]  Charging decisions are based on probable cause, and Indiana law has "never required the State to be able to demonstrate evidence on every element of an offense in order to file a charge or utilize a potential charge in plea negotiations."  *Smith v. State*, 770 N.E.2d 290, 297 (Ind. 2002).  A prosecutor may properly file any charge supported by probable cause, and threatening to file such a charge to induce a plea is constitutionally legitimate.  *See Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978).  "Probable cause exists when the facts and circumstances within an officer's knowledge, which are based upon reasonably trustworthy information, are sufficient to warrant a reasonable man's belief that a crime has been or is being committed."  *Stosnider v. State*, 422

---

[2] Indiana has since amended the statute to replace "deviate sexual conduct" with "other sexual conduct."  *See* Ind. Code § 35-42-4-3(a) (2014).

N.E.2d 1325, 1328 (Ind. Ct. App. 1981). Probable cause to charge requires more than mere suspicion. *Id.*

[23] Adcock's sole contention on this issue is there was no evidence of penetration, and therefore the threat to file a Class A felony charge was illusory. Specifically, he cites *Spurlock v. State*, 675 N.E.2d 312 (Ind. 1996), where our supreme court held proof of the slightest degree of penetration of a sex organ is sufficient to prove penetration, but a showing of mere contact—by itself— between an object and sex organ is not sufficient to support a conviction. *Id.* at 315. As we recently explained,

> [*Spurlock*] clearly establishes that mere contact between a male and female sex organ is not by itself sufficient evidence of penetration. There, the twelve-year-old victim testified that the defendant's penis touched her vagina. She also said that the defendant "tried" to have intercourse with her but she did not know whether he had penetrated her vagina, and there was no medical evidence of penetration. The court reversed the defendant's conviction for Class A felony child molesting because there was insufficient evidence of penetration. The court specifically noted . . . it was confronted with a situation where the victim herself, who was of an age to understand and respond to the questions, did not state that penetration occurred and there was no medical or physical evidence of penetration.

*Adcock v. State*, 22 N.E.3d 720, 728-29 (Ind. Ct. App. 2014) (citations and some internal quotation marks omitted). Similar to *Spurlock*, Adcock first asserts C.S. never stated to the forensic interviewer that penetration occurred. Second, there was no physical evidence of penetration. Third, C.S. was of an age to

understand and respond to the forensic interviewer's questions. We, however, find this case distinguishable from *Spurlock*.

[24] The defendant in *Spurlock* challenged the sufficiency of the evidence after being convicted of child molesting. The jury concluded the State had met its high burden of proving beyond a reasonable doubt that Spurlock had penetrated the victim's sexual organ. Here, the State never charged Adcock with a Class A felony; the State merely relayed its belief it could add the charge. Thus, the State did not need to prove the elements of Class A felony child molesting beyond a reasonable doubt before relaying its belief it could add the charge. In fact, the State never needs "to demonstrate evidence on every element of an offense in order to file a charge or utilize a potential charge in plea negotiations." *Smith*, 770 N.E.2d at 297. Rather, the State need only have probable cause to threaten a defendant with an additional charge to induce a plea. *Bordenkircher*, 434 U.S. at 364.

[25] We conclude the post-conviction court did not err in determining the State's threat to file a Class A felony charge was viable. C.S. claimed Adcock would often touch her on her vagina under her clothes and on the skin. C.S. told Adcock to stop because it made her feel uncomfortable. Although he denied ever penetrating C.S., Adcock did admit to rubbing her vagina.

[26] Additionally, at the post-conviction evidentiary hearing, Snyder testified she had originally contemplated filing a Class A felony because she felt there was more than enough probable cause:

[Snyder:]  Based upon the Probable Cause Affidavit, I had been considering amending it to, probably I would have gone to the completed offense of Class A Child Molest, and then I would have the inherently included Attempt, or sometimes if I think my Attempt is a stronger case, I will do the completed case of a Class A and then do a second count of Attempted to make everybody aware of it.

[Adcock's Counsel:]  What in particular in the Probable Cause Affidavit led you to suspect that you had an A felony on your hands?

[Snyder:]  Slight penetration.

[Adcock's Counsel:]  Where does that say that there was slight penetration?

[Snyder:]  Well, slight penetration is based upon the facts.  That would be a legal definition.  Slight penetration would be any penetration of the female sexual organ.

[Adcock's Counsel:]  Okay.

[Snyder:]  In my experience . . . with the Child Molest prosecution case, slight penetration oftentimes in the rubbing of the female sexual organ, which is stimulation of the clitoris, which would be the breaching of the labia.

* * *

Basically, Scotty Adcock would come in the room, reach under her pants, and pat her private.  And then went on to say that he indicated that he would rub C.S.'s vaginal area.  And that right there could be sufficient to get you started on the slight penetration or an attempt of slight penetration.

[Adcock's Counsel:]  Okay.  So it's a start there?

[Snyder:]  Well, I think that that would more than give you the probable cause to go ahead and amend with the rest because you are rubbing the vaginal area.

Post-Conviction Evidentiary Hearing Transcript at 55-57.  Further, Snyder

testified she originally undercharged Adcock because he had confessed and

took responsibility for his conduct, but she was prepared to file a Class felony A if a plea agreement could not be reached.

[27] Similar to Snyder, Schwartz testified her sole concern in the plea negotiations was the State amending the charges to include a Class A felony child molesting or attempted child molesting charge. Schwartz testified she based this concern off her conversations with Snyder and because:

> In this particular case . . . he had given a confession as to touching the child under her clothes on her bare skin in her private area. And I know there was case law that indicated that penetration of the vaginal area was not required to prove the A [felony]. Deviate sexual conduct could be proved by penetration of the outer portions of the female sex organ which would be the lips.

Transcript of Evidence at 41. Moreover, Schwartz testified "if Snyder could show that he was grooming the child, that he then touched her under the clothes multiple times on her genitalia, my concern was that a jury might believe that there was that *attempt* to the deviate sexual conduct." *Id.* at 43 (emphasis added). This concern rings especially true considering C.S. requested Adcock stop touching her.

[28] Based on the above facts and testimony, the post-conviction court concluded, "the State's threat to amend the C felony charges to A felony charges was not illusory. The threat [Adcock] faced at the time of the plea was solidly based on the law, and the State was positioned to execute the threat had the case gone to trial." Appellant's App. at 168-69. We agree; the State had probable cause and

its threat of charging Adcock with a Class A felony was not illusory. Because of the State's viable threat, Schwartz acted appropriately in relaying the threat to Adcock. Therefore, we conclude the evidence does not lead "unerringly and unmistakably to a decision opposite that reached by the post-conviction court." *McCary*, 761 N.E.2d at 391.

Because we are not persuaded there were any illusory threats, we conclude Adcock's counsel was not deficient. Thus, because Adcock does not succeed under the first prong of the *Strickland* test, we need not examine whether Adcock suffered any prejudice.

# III. Involuntary Plea

## A. Standard of Review

When reviewing the voluntariness of a guilty plea, we look at all the evidence before the post-conviction court. *Moffitt v. State*, 817 N.E.2d 239, 249 (Ind. Ct. App. 2004), *trans. denied*. If the evidence supports the post-conviction court's determination the guilty plea was voluntary, intelligent, and knowing, we will not reverse. *Id.*

> When a guilty plea is attacked because of alleged misinformation concerning sentencing, the issue of the validity of such plea is determined by the following two-part test: (1) whether the defendant was aware of actual sentencing possibilities; and (2) whether the accurate information would have made any difference in his decision to enter the plea.

*Id.*

## B. Adcock's Plea

In arguing his plea was involuntary, Adcock incorporates the same arguments noted above. Specifically, he claims the State's illusory threats had the effect of rendering his plea involuntary.

> Whether viewed as ineffective assistance of counsel or an involuntary plea, the postconviction court must resolve the factual issue of the materiality of the bad advice in the decision to plead, and postconviction relief may be granted if the plea can be shown to have been influenced by counsel's error.

*Segura v. State*, 749 N.E.2d 496, 504-05 (Ind. 2001). The post-conviction court found Adcock was not faced with an illusory threat at the time he entered a plea of guilty and Adcock's counsel did not provide bad advice. Therefore, the court found Adcock's plea was voluntary. As noted above, the post-conviction court did not err in finding there was no illusory threat by the State and Adcock's counsel was not deficient. Accordingly, we find Adcock's guilty plea was voluntary.

# Conclusion

Because Adcock did not face an illusory threat at the time he entered a guilty plea, we conclude Adcock's counsel was not deficient and Adcock's plea was

not involuntary. Accordingly, we affirm the denial of post-conviction relief.

[33]   Affirmed.

Vaidik, C.J., and Pyle, J., concur.